Washington Arbitration Case.

Argued October 1, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Jerome Hahn,* City Solicitor, for appellant.

*Robert L. Ceisler,* with him *Patrono, Ceisler and Edwards,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, November 28, 1969:

Resort to binding arbitration for the resolution of labor disputes between political subdivisions of this Commonwealth and their police and fire department

employees was authorized by the Act of June 24, 1968, P. L.    , 43 P.S. §217.1 et seq. (Supp. 1969). Under the authority of this statute the City of Washington entered into negotiations with its policemen. It soon became apparent that no voluntary agreement could be reached and that the parties would have to invoke the arbitration provisions of the aforementioned statute. Arbitration was entered into, hearings were held, and an award was given on December 11, 1968. There were no procedural irregularities in the arbitration process, but the city challenged that portion of the award which required that it provide, "at its sole expense, hospitalization coverage for the members of the family of each member of the Police Department of the City of Washington, equal to the coverage now provided . . . for the member himself." The city has at all times contended that it would be illegal for it to make such payments.

After the arbitration award was handed down the city instituted an action in the Court of Common Pleas of Washington County, alleging that it was appealing from the arbitration award. Appellee Police Department questioned both the right of the city to "appeal" the award and the merits of the city's claim. The trial court found, inter alia, that the city did not have the right to appeal the award and that the city was wrong on the merits in any event. The city filed exceptions to the trial court's opinion, appealed its decision, and concurrently petitioned this Court to allow an appeal under Rule 68½ directly from the arbitration award.

We hold that the Court of Common Pleas of Washington County had no jurisdiction to hear this cause. The statute authorizing this arbitration clearly provides that "the determination of the majority of the board of arbitration thus established shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen in-

volved. . . . No appeal therefrom shall be allowed to any court." Act of June 24, 1968, P. L.    , 43 P.S. §217.7(a) (Supp. 1969). This Court has long recognized that the Legislature has the right to preclude appeals. See *Keystone Raceway Corp. v. State Harness Racing Comm.*, 405 Pa. 1, 173 A. 2d 97 (1961); *DeVito v. Civil Service Comm.*, 404 Pa. 354, 172 A. 2d 161 (1961); *Dauphin Deposit Trust Co. v. Myers*, 401 Pa. 230, 164 A. 2d 86 (1960). The city argues, albeit in a less than cogent fashion, that several recent alterations in the organic and statute law of the Commonwealth have changed this doctrine. We do not agree.

The city's first contention is that Article V, Section 9 of the Pennsylvania Constitution, together with several recent statutes designed to implement its provisions, requires that it be given a right of appeal.[1] Article V, Section 9, states that: "There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court. . . ." This provision is inapplicable to the case at hand. An arbitration panel is neither a court nor an administrative agency.[2] The inherent differences between an ar-

---

[1] We must note that the two statutes relied upon by the city, Act of December 2, 1968, P. L.    , 5 Purdon's Pennsylvania Legislative Service 965-66 (12 P.S. §§1111.1, 1111.2), and Act of December 2, 1968, P. L.    , 5 Purdon's Pennsylvania Legislative Service 968-69 (42 P.S. §§11301-11311), merely implement the provisions of Art. V, Sec. 9, Pennsylvania Constitution, with respect to courts of record and local administrative agencies respectively.

[2] The Administrative Agency Law, Act of June 4, 1945, P. L. 1388, §2, 71 P.S. §1710.2, defines "agency" as one having statewide jurisdiction. The new Local Agency Law, Act of December 2, 1968, P. L.    , §2, 5 Purdon's Pennsylvania Legislative Service 968 (42 P.S. §§11301-11311), defines "local agency" as "any department, departmental board or commission, independent administrative board or commission, office or other agency of a political

bitration panel on the one hand, and courts and administrative agencies on the other, well explain the logic behind the distinction. An arbitration panel is a temporary "one shot" institution, convened to respond to a specific conflict. Once it reaches a decision it is disbanded and its members disperse. Its resolution of the dispute must be sure and swift, and much of its effectiveness would be lost if the mandate of its decision could be delayed indefinitely through protracted litigation.

We have concluded therefore that the city did not have the right to appeal.[3] However, the city's rights under the United States and Pennsylvania Constitutions, and specifically its right to due process, are not harmed thereby. Neither constitution requires that there be a right of appeal from an arbitration award. Every decision-making tribunal is required to conduct its affairs in accordance with the mandates of due process, and we will not indulge in the presumption that the likelihood of a due process or other constitutional violation is significantly greater in a tribunal such as an arbitration panel than it is in an appellate court. In addition, the procedure under Rule 68½ of this Court is a perfectly adequate mechanism for the protection of constitutional rights.

We have decided to grant the city's petition under Rule 68½. The parameters of the review permissible

---

subdivision now in existence or hereafter created, empowered to determine or affect private rights, privileges, immunities or obligations by adjudication . . . ." It is clear that a "local agency" is one with a continuing jurisdiction, and not a temporary body. We can also note that whatever else it is, an arbitration panel certainly is not a court.

[3] We also note that the city could merely have refused to comply with the award and waited for the policemen to seek an order of mandamus. This was the procedure used by the Borough of East Lansdowne to gain judicial review in *Harney v. Russo*, 435 Pa. 183, 255 A. 2d 560 (1969).

under that rule are as follows: "If an appeal is prohibited by an Act, or the decision of the Agency is stated to be final or conclusive, the law is well settled that an appeal will lie to the Courts in the nature of a narrow certiorari, and this Court will review only (1) the question of jurisdiction; (2) the regularity of the proceedings before the agency; (3) questions of excess in exercise of powers; and (4) constitutional questions: Cf. DeVito v. Civil Service Commission, 404 Pa. 354, 172 A. 2d 161 (and cases cited therein); Dauphin Deposit Trust Company v. Myers, 401 Pa. 230, 164 A. 2d 86." *Keystone Raceway Corp. v. State Harness Racing Comm.,* 405 Pa. 1, 5-6, 173 A. 2d 97, 99 (1961). The city urges us to view this case as one involving an "excess in exercise of powers," and to vacate the offending portion of the panel's award on that ground.

Whether the decision maker in an adjudicatory process has been guilty of an excess in the exercise of power depends fundamentally on whether he has gone outside the boundaries of his authority. No adjudicatory body has unlimited discretion. At the very least, each and every adjudicator is bound by the Constitution of the United States; and most are bound by even tighter strictures. The restrictions may go to the nature of the controversies which they can decide, the parties who may appear before them, the type of relief they may grant, or any other element in the adjudicatory process.[4] In the instant case the adjudicatory

---

[4] Compare *Dauphin Deposit Trust Co. v. Myers,* 388 Pa. 444, 130 A. 2d 686 (1957). In that case the Secretary of Banking refused to issue Articles of Merger on the ground that the proposed combination would result in "overbanking" in the affected area. The statute provided that the secretary's decision was unreviewable. The secretary had jurisdiction over controversies of the type involved and due process had not been violated. We held, however, that the secretary's decision had to be reversed because we

power is an arbitration panel. Since it is a creature of the Legislature we must look to see if its powers were restricted in any way. If they were, and if the panel went beyond the limits of its authority, then it committed an excess in the exercise of power and the tainted portions of its mandate may be reviewed and corrected.

The enabling legislation which created the arbitration system here in question contains no explicit reference to the scope of the arbitrator's power. It provides only that policemen and firemen "have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act." Act of June 24, 1968, P. L.    , §1, 43 P.S. §217.1 (Supp. 1969). The remainder of the provision deals only with the procedures and timing of the arbitration.[5]

Some aid, however, can be derived from Article III, Section 31 of the Pennsylvania Constitution, which authorized compulsory arbitration.[6] It is there provided

---

found that the relevant statute did not give him the authority to refuse to issue Articles of Merger for this reason.

[5] We note that while the statute contains no express limitations on the power of the arbitrators, neither could it fairly be interpreted to impliedly grant public employers the power to do whatever the arbitrators decree if such action is otherwise forbidden. No one would argue, for instance, that a public employer could set up different wage scales for its black and its white employees just because the arbitrator so ordered.

[6] A constitutional amendment was necessary for this provision because it had previously been held that a statute making an arbitration award binding on a public employer would be an unconstitutional delegation of legislative power. See *Erie Firefighters Local No. 293 v. Gardner*, 406 Pa. 395, 178 A. 2d 691 (1962) ; *Harney v. Russo*, 435 Pa. 183, 255 A. 2d 560 (1969).

that the: ". . . General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take action necessary to carry out such findings."

Our task is to give content to the phrase "acting in accordance with law." Our difficulty is that it must be interpreted in the context of a statute and constitutional provision which explicitly provide that an arbitration award serves as an affirmative mandate to the administrative and legislative branches of the public employer. In *Harney v. Russo*, 435 Pa. 183, 255 A. 2d 560 (1969), we held, when dealing with this provision, that " 'in accordance with law' merely means that the arbitrators, in conducting their hearings and making an award, may not violate the requirements of due process and must adhere to the mandates of the enabling legislation." 435 Pa. at 188, 255 A. 2d at 562. It is clear then that this provision does not, by its own force, place any specific limit on the authority of the arbitrators.

In spite of the fact that neither the relevant constitutional provision nor the enabling legislation clearly delineates the power of the arbitration panels, we are of the opinion that such panels may not mandate that a governing body carry out an illegal act. We reach this result by quite frankly reading into the enabling legisla-

tion the requirement that the scope of the submission to the arbitrators be limited to conflicts over legitimate terms and conditions of employment. Were this not so, virtually any issue could be submitted to the arbitrators under the guise of a labor conflict. Further, we fully realize that there will be issues that would be fully legitimate in the context of a private sector labor dispute which will not be legitimate in the context of a public sector labor dispute. Public employers are in many respects more limited in what they may do vis-a-vis their employees, and those limitations must be maintained. The essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily. We emphasize that this does *not* mean that a public employer may hide behind self-imposed legal restrictions. An arbitration award which deals only with proper terms and conditions of employment serves as a mandate to the legislative branch of the public employer, and if the terms of the award require affirmative action on the part of the Legislature, they must take such action, if it is within their power to do so.

The final question is whether the City of Washington is legally prohibited by some higher authority from paying hospitalization insurance premiums for the families of its employees. We begin with the proposition that as a nonsovereign, a third class city has only those powers expressly given it by the Legislature. *Cleaver v. Board of Adjustment,* 414 Pa. 367, 200 A. 2d 408 (1964); *Genkinger v. New Castle,* 368 Pa. 547, 84 A. 2d 303 (1951). The statute which is most relevant is the Act of May 22, 1933, P. L. 927, 53 P.S. §37403-53. It is there provided that a third class city may "make contracts of insurance . . . insuring its elected or appointed officers, officials and employees, or any class or classes thereof, under a policy or policies of group insurance covering . . . hospitalization." The city ar-

gues that this statute prevents them from paying hospitalization insurance premiums for anyone who is not actually an employee of the city. We agree.

Appellees argue that hospitalization insurance covering the family of an employee can be denominated a "contract of insurance . . . insuring . . . employees," because the economic realities of the situation are such that it is the employee who is being protected against economic loss. Although this argument makes a certain amount of economic sense if we assume that all city employees and officials are heads of a household, we do not believe that it accurately reflects the probable meaning of the legislation.

We are well aware of the fact that the legislative policy precluding the payment of premiums such as those involved in this case may be weak indeed—a conclusion fairly drawn from two recent legislative acts. The first is the Act of November 27, 1967, P. L. 628, 53 P.S. §39951 (Supp. 1969), which provides that when a city of the third class acquires an existing transportation system it shall continue to give the employees of the acquired system all the benefits they enjoyed before the acquisition, including insurance benefits. The second is the Optional Third Class City Charter Law, Act of July 15, 1957, P. L. 901, 53 P.S. §41404 et seq. (Supp. 1969), which provides an optional form of government for cities of the third class and gives those cities who exercise the option a much broader range of power. See Act of July 15, 1957, P. L. 901, 53 P.S. §§41301-41305 (Supp. 1969). Although it may be argued that both of these enactments demonstrate the absence of a clear legislative policy favoring the proscription, neither is of sufficient force to imply a legislative abandonment of that enactment. The first mentioned piece of legislation was a narrow response to the specific problems encountered by a city stepping into a pre-existing employment relationship. The sec-

ond statute is by its very terms intended to provide an alternative method of governing a third class city, and can be utilized only after the residents have voted to abandon their old form of government and adopt this one in its stead.

We conclude, therefore, that the plain meaning of 53 P.S. §37403-53 makes it illegal for the city to comply fully with the arbitration award. We therefore hold that the panel committed an excess in exercise of power and we vacate that portion of the award directing the city to pay hospitalization insurance premiums for members of the policemen's families.

Judgment of the Court of Common Pleas of Washington County is vacated and the arbitration award is modified to exclude the requirement that the City of Washington pay premiums on hospitalization insurance covering persons other than employees.