Chief Judge Fuld (concurring).
I, too, am for affirmance but I cannot agree that, in order to sustain the constitutionality of section 716 of the Labor Law, it is necessary to accord to CPLB 7511 the strained and artificial construction given it by the majority and to ascribe to the language of that provision one meaning when the court deals with an award in a consensual arbitration proceeding and separate and different meanings when the award is made in the compulsory arbitration proceeding provided for by section 716. In other words, it is my view that that section meets due process requirements if 7511 is read, as the Legislature intended it to be understood, to afford the same measure of judicial review in both instances.
Section 716 of the Labor Law was enacted, and is primarily designed, to prevent strikes and bring about peaceful settlement of labor disputes arid grievances between the employees of nohprofitmaking hospitals and their employers. In order to render the statute effective, the Legislature determined that it was not enough merely to outlaw such strikes. It was its con *512 sidered decision that, in addition, it was essential to provide the employees, deprived of their power to strike, with ‘ ‘ adequate means of securing relief against substandard wages and working conditions ” when they were unable to reach agreement ' through collective bargaining. (Long Is. Coll. Hosp. v. Cather-wood, 23 N Y 2d 20, 32.)
Compulsory arbitration was selected as the best means for attaining this result because an arbitration panel—chosen from among persons with experience and expertise in the field of labor relations—would not be hampered by the usual rules of evidence or the need to prepare a formal record. Its proceedings may be conducted in an informal and expeditious manner and, a consideration of the greatest importance, its award, once rendered, will be made effective with a minimum opportunity afforded the employer to engage in delaying tactics, in consequence of which the workers would be forced to remain on the job without a contract. Recognizing that a provision for more extensive judicial review would dilute, if not negate, these advantages, the Legislature provided, as an integral part of the compulsory arbitration statute, that all proceedings to [1] ‘ confirm, modify, correct or vacate an arbitration award made pursuant to the procedure established by this section shall be made in accordance with the provisions of article seventy-five of the civil practice law and rules ” (Labor Law, § 716, subd. 6, par. [b]; emphasis supplied).
The pertinent section of “ article seventy-five ” is CPLR 7511. The grounds there specified for vacating an award, as they have always been applied to consensual arbitrations, are by no means as narrow or restricted as the court’s opinion might lead one to believe and are fully adequate to meet all constitutional demands. For instance, an award may be set aside, under CPLR 7511, if the arbitrator exceeds his power (subd. [b], par. 1, cl. [iii]); if the award is the result of corruption, fraud or misconduct (subd. [b], par. 1, cl. [i]); if the award is attributable to partiality on the part of the arbitrator (subd. [b], par. 1, cl. [ii]); if the award contravenes public policy (see, e.g., Matter of Western Union Tel. Co. [ACA], 299 N. Y. 177, 188; Matter of Publishers’ Assn. [Newspaper Union], 280 App. Div. 500, per Bergan, J.); if the arbitrator refuses to hear relevant evidence (see Gervant v. New England Fire Ins. Co., 306 N. Y. *513 393, 399-400; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7511.17, p. 75-167); or if basic procedural due process requirements, including adequacy of notice and opportunity to defend, have been violated. (See Hays, The Future of Labor Arbitration, 74 Yale L. J. 1018,1029 et seg[.)
In short, by merely giving the language of CPLB 7511 the meaning always accorded it in cases involving consensual arbitrations, without in any way changing that meaning, our courts now have the right to review fundamental questions, such as whether the arbitrator exceeded his authority or whether he violated basic due process requirements in the conduct of the proceedings. It follows, therefore, that the measure of review thus provided by section 7511, “ limited ” though it may be, satisfies every due process demand.
However, despite this and despite the Legislature’s clear intent, unambiguously expressed in section 716 of the Labor Law, to apply to compulsory arbitration proceedings the very same measure of judicial review as governs arbitrations voluntarily undertaken, the majority has chosen to disregard that intent and have the scope of such review turn on the nature of the arbitration. It accomplishes this by taking the provision declaring that an award is to be set aside when the arbitrator “ exceeded his power” (CPLB 7511, subd. [b], par. 1, cl. [iii]) and giving the quoted words three significantly different meanings. More specifically, the majority is according to those words one meaning in the case of consensual arbitrations (opn., p. 507), a second meaning in the case of compulsory arbitrations involving the interpretation or application of an existing collective bargaining agreement (opn., p. 509Y and still another and third meaning in the case of compulsory arbitrations involving the terms of a new agreement (opn., p. 509).[1]
[2]
I recognize that, in certain instances, a court may read additional meanings into a statute in order to preserve its constitutionality but this case neither calls for nor permits application of that principle. As I have stated, there is no constitutional *514 infirmity in section 716 as it was enacted and as the Legislature intended it to read hut, even if there were, it could not be cured by ascribing three different meanings to the very same statutory language.
No court has ever held that due process requires more than the limited review allowed by CPLR 7511, as it has been consistently applied over the years. In point of fact, a number of courts, including the United States Supreme Court, have enforced compulsory arbitration statutes with no broader judicial review than that provided by that section.[3] More particularly, the high courts of both Minnesota and Pennsylvania have sustained statutes sanctioning compulsory arbitration (Pa. Act of June 24, 1968, Act No. Ill, § 7, subd. [a], 43 Pa. Stat., § 217.7, subd. [a]; Minn. Stat. Ann., §§ 179.35-179.39), even though they expressly provided that the award rendered was final and unappealable. (See Washington Arbitration Case, 436 Pa. 168; Fairview Hosp. Assn. v. Public Bldg. Serv. Union, 241 Minn. 523.)[4]
The Pennsylvania statute (Pa. Act of June 24, 1968, Act No. Ill, § 7, subd. [a], 43 Pa. Stat., § 217.7, subd. [a]) provided for compulsory arbitration for the resolution of disputes between political subdivisions of the Commonwealth and the employees of their police and fire departments. It expressly recited that “ [t]he determination of the majority of the board of arbitration * * * shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved * * * [and that] [n]o appeal therefrom shall be allowed to any court.” In the Washington Arbitration *515 Case (436 Pa. 168, supra), the City of Washington objected to a portion of such an award and sought to take an appeal despite this provision. The Pennsylvania Supreme Court, rejecting the contention that denial of a right to appeal from a determination in the arbitration proceeding violated the due process rights of the party challenging the award, held the statute constitutional. (See Washington Arbitration Case, 436 Pa. 168, supra.) After noting that the arbitral award was unappealable, the court stated (436 Pa., at p. 173):
“ However, the city’s rights under the United States and Pennsylvania Constitutions, and specifically its right to due process, are not harmed thereby. Neither constitution requires that there be a right of appeal from an arbitration award. Every decision making tribunal is required to conduct its affairs in accordance with the mandates of due process, and we will not indulge in the presumption that the likelihood of a due process or other constitutional violation is significantly greater in a tribunal such as an arbitration panel than it is in an appellate court.”
In reaching this conclusion, the court took pains to point out that the arbitration panel’s “ resolution of the dispute must be sure and swift, and [that] much of its effectiveness would be lost if the mandate of its decision, could be delayed indefinitely through protracted litigation” (p. 173). This did not, however, mean that there was to be no judicial review whatever. Just as our Legislature recognized, in enacting CPLB 7511, that there should be a limited judicial inquiry to assure compliance with constitutional demands, so the Pennslyvania court declared—quoting from an opinion in an earlier .case (Keystone Raceway Corp. v. State Harness Racing Comm., 405 Pa. 1, 5-6)—that there would be review, but “ ‘ only [of] (1) the question of jurisdiction; (2) the regularity of the proceedings before the agency; (3) questions of excess in exercise of powers; and (4) constitutional questions ’” (p. 174).[5]
*516 The majority’s assertion that the Pennsylvania statute and the court’s decision in the Washington Arbitration Case (436 Pa. 168, supra) are “ irrelevant ” (opn., p. 501, n. 2) overlooks the fact that the statute and the decision applied not only to the public employer (the city) but to its policemen and firemen as well, and that they, too, would have been barred from an appeal had it been they who had challenged the award. Although there may be, as stated in the majority opinion (p. 501, n. 2), 1 ‘ no due process constitutional limitations on a State legislating restrictions on itself or its creature subdivisions ”, the Pennsylvania court’s reasoning and conclusion did not turn on any such proposition. As is evident from the cases it cited when it declared that “ [t]his Court has long recognized that the Legislature has the right to preclude appeals ” (436 Pa., at p. 172), the sole ground for its decision was that a statute authorizing compulsory arbitration is valid and constitutional, no matter who the parties to the proceeding are, even though it provides that the determination is final and unappealable.
Moreover, the Federal courts have long been enforcing compulsory arbitration statutes which provide for review at least as limited as that provided by the CP'LR. In the Trainmen case (353 U. S. 30, supra), for instance, the Supreme Court held that a provision of the Railway Labor Act (U. S. Code, tit. 45, § 151 et seq.), prescribing compulsory arbitration of so-called “minor disputes”—i.e., disputes concerning the application or interpretation of existing collective bargaining agreements [6]—was enforceable, despite the fact that the statute did not require judicial review on the basis of substantial evidence (U. S. Code, tit. 45, § 153, subd. First, par. [p]; § 159, subd. Third). And, in Gunther v. San Diego & A. E. Ry. Co. (382 U. S., at pp. 263-264), the court expressly held that such awards are “ 1 the complete and final means of settling minor disputes, ’ ” and are not reviewable except on limited grounds similar to those which apply to consensual arbitrations.
Although the Trainmen and Gunther cases involved ‘ ‘ minor disputes,” the courts have reached a similar result where Congress has, by special legislation, extended the compulsory *517 arbitration provisions of the Railway Labor Act to issues which, like those in the case before us, would constitute a “major dispute”, that it, a disagreement as to the terms of a new collective bargaining agreement. (See Brotherhood of Railroad Trainmen v. Missouri Pac. R. R. Co., 230 F. Supp. 197, supra; Brotherhood of Loc. Fire. & Eng. v. Chicago B. & Q. R. R. Co., 225 F. Supp. 11, affd. 331 F. 2d 1020, cert. den. 377 U. S. 918, supra.) Thus, in the Brotherhood of Railroad Trainmen case (230 F. Supp. 197, supra), the statute was held to satisfy due process requirements, even though it provided for exceedingly limited judicial review (230 F. Supp., at pp. 202-203).[7]
If the majority were correct in its insistence that a broader measure of review is compelled than is accorded to consensual arbitrations (CPLR 7511), then, the Supreme Court, in deciding the Trainmen (353 U. S. 30, supra) and Gunther (382 U. S. 257, supra) cases and their progeny, has overlooked a vital constitutional precept, and the due process rights of parties who submitted their minor disputes to compulsory arbitration under the Railway Labor Act have been violated for more than twenty years.
I believe that the hypotheses which underlie the decision now being made — that a compulsory arbitration proceeding is governed by the rules applicable to administrative agencies and that due process requires that the courts review the reasonableness and sufficiency of the evidence supporting their determinations— are false. As the authorities demonstrate, there is no constitutional requirement that the determination in an administrative proceeding, or compulsory arbitration, fairly conducted in accordance with a valid statute, be subjected to re-examination by the courts.
*518 It is established beyond dispute that a legislative body may create a tribunal, other than a court, and vest it with the power to hear and finally determine disputes, even when substantial property rights are involved, as long as the procedures followed comport with the essential requirements of the Due Process Clause.[8] The fundamental requisite of due process in connection with administrative proceedings is the opportunity of the parties to be heard, that they have timely and adequate notice of the hearing and an effective chance to defend themselves by confronting adverse witnesses before an impartial decision maker. (See Goldberg v. Kelly, 397 U. S. 254, 266 et seq.) It must, however, be understood, as the Supreme Court has put it, that “ [d]ue process is not necessarily judicial process.” (Reetz v. Michigan, 188 U. S. 505, 507.) Once a full and sufficient hearing has been held, whether by court or administrative agency, ‘ ‘ due process does not require that a decision made by an appropriate tribunal shall be reviewable by another.” (St. Joseph Stock Yards Co. v. United States, 298 U. S. 38, 77.)[9]
Administrative determinations, it is true, are usually subject to review to ascertain whether they are reasonable or supported by sufficient evidence. However, the availability of such review turns not on any constitutional requirement but on legislative decision. There is no constitutional right to an appeal and, consequently, the Legislature is privileged to provide that an administrative determination is to be treated as final and unappealable.[10] Although, in some instances, one may debate the wisdom of rendering such determinations final, ‘ ‘ the plain fact remains that the Supreme Court has never held *519 that denial of a limited review is a denial of due process of law.” (4 Davis, Administrative Law Treatise, § 28.19, p. 106.)
Since this is so with respect to determinations by administrative bodies, it must follow that there is likewise no constitutional necessity for more than a limited review of an award in an arbitration proceeding. As long as the arbitrator acts within the limits of his statutory authority, CPLR 7511, as it has ever been construed and applied, is entirely adequate to insure compliance with due process requirements.
Not only, then, is there no constitutional requirement that the courts undertake an independent examination of the merits of the award in the compulsory arbitration proceeding under section 716 of the Labor Law but the imposition of such a requirement would necessitate a change in the nature of the arbitration proceeding so drastic as to substantially impair the purpose of the statute. The Legislature, in enacting section 716, must have determined that the task of formulating a complete labor contract — calling for specific wage rates, job classifications, vacation policies, pension plans, seniority provisions, allocation of employee functions, hours of labor, overtime rates, etc.— could and should only be performed by a body of arbitrators who have special expertise in the labor management field and that their experience, when brought to bear on the problems of nonprofitmaking hospitals, can best assist in the resolution of their labor controversies without judicial interference.
It was, I suggest, in reliance upon their expertise and with knowledge of the fact that labor disputes, if not promptly resolved, may lead to strikes and picket lines—even though *520 forbidden by law—that the Legislature passed the statute under consideration. Its design was to leave those disputes to the arbitrators as “ ‘ a mandatory, exclusive, and comprehensive system’” for resolving disputes. (Gunther v. San Diego & A. E. Ry. Co., 382 U. S., at p. 264.) The Legislature did not intend that the courts be the final arbiter of substantive economic and labor relation issues arising out of a new collective bargaining agreement or to permit the harassing and time-consuming delays which would inevitably result from the introduction of judicial proceedings to review arbitration awards.
In conclusion, there is neither legislative prescription nor constitutional mandate to warrant reading into the statute grounds for vacating awards, not specified in CPLR 7511, which would be applicable only to cases involving compulsory arbitration. The courts below were eminently correct in upholding the Labor Law provision (716, subd. 6, par. [b]), even though it limits judicial review to the grounds expressly contained in article 75 of the CPLR.

. In such a ease, the court writes, the award would he governed by the substantial evidence rule (opn., p. 509).

. In this case, the court states that the award must not only pass the arbitrary and capricious test but “ must be justified by the public interest and reasonable conditions to effect that interest ” (opn., p. 510).

. See, e.g., Gunther v. San Diego & A. E. Ry. Co., 382 U. S. 257; Trainmen V. Chicago R. & I. R. R. Co., 353 U. S. 30; Switchmen’s Union v. Board, 320 U. S. 297, 301; Brotherhood of Railroad Trainmen v. Missouri Pac. R. R. Co., 230 F. Supp. 197; Brotherhood of Loc. Fire, & Eng. v. Chicago, B. & Q. R. R. Co., 225 F. Supp. 11, affd. 331 F. 2d 1020, cert. den. 377 U. S. 918; Washington Arbitration Case, 436 Pa. 168; Fairview Hosp. Assn. v. Public Bldg. Serv. Union, 241 Minn. 523.)

. In addition, it is noteworthy that in every instance, cited in the majority (opn., p. 501), in which “substantive review” of a compulsory arbitration award has been made available, it has been the result of a statutory enactment. (See, e.g., Florida Stat. Ann., § 453.10; Ind. Stat. Ann., § 40-2412; Hew Jersey Stat. Ann., 34:13B-23; 43 Pa. Stat., § 213.13, subd. [h]; Wis. Stat. Ann., § 111.60, subd. [3].) Ho court has ever held that such judicial consideration is demanded by due process or any other constitutional provision.

. The court did, I note in passing, vacate a portion of the award on the ground that the arbitration panel had exceeded its power by going “ outside the boundaries of [its] authority” (436 Pa., at pp. 174 et seq.).

. The Railway Labor Act distinguishes between “ minor disputes ”— defined in the text—and “major disputes”; the latter are those relating to the terms of a new collective bargaining agreement.

. In the Brotherhood of Loc. Fire. & Eng. case (225 F. Supp. 11, affd. 331 F. 2d 1020, cert. den. 377 U. S. 918, supra), involving the same question, the court wrote that it “ may consider only whether the award conforms to the requirements of law or to the stipulations of the agreement to arbitrate. In this instance, the enabling Act supplants an agreement to arbitrate. The court may not review the question whether there is substantial evidence to sustain the findings of fact. It follows * * * that the scope of review in this instance is much narrower than that which generally prevails in connection with administrative decisions ” (p. 18; emphasis supplied).

. See, e.g., Goldberg v. Kelly, 397 U. S. 254, 266 et seq.; St. Joseph Stock Yards Co. v. United States, 298 U. S. 38, 76-82, per Brandeis, J., concurring; Douglas v. Noble, 261 U. S. 165, 170; Crane v. Hahlo, 258 U. S. 142, 147; Reetz v. Michigan, 188 U. S. 505, 507; Hurtado v. California, 110 U. S. 516, 537; Matter of Board of Transp. of N. Y., 272 N. Y. 52, 55; see, also, Matter of Guardian Life Ins. Co. v. Bohlinger, 308 N. Y. 174, 182—183; Matter of Jeanpierre v. Arbury, 4 N Y 2d 238, 240.

. See, also, National Union v. Arnold, 348 U. S. 37, 43; Luckenbach S. S. Co. v. United States, 272 U. S. 533, 536; Pittsburgh Ry. Co. v. Backus, 154 U. S. 421, 426-427; Reetz v. Michigan, 188 U. S. 505, 508, supra; but cf. Ohio Val. Co. v. Ben Avon Borough, 253 U. S. 287.

. See, e.g., Matter of Guardian Life Ins. Co. v. Bohlinger, 308 N. Y. 174, 182-183; Matter of Jeanpierre v. Arbury, 4 N Y 2d 238, 240; Matter of Board of Transp. of N. Y., 272 N. Y. 52, 55; see, also, 4 Davis, Administrative Law Treatise, §§ 28.18, 28.19.
And it is, I venture, for this reason that, as noted above (p. 514, n. 4), in every instance in which there has been “ substantive review ” of a compulsory arbitration award, the requirement was prescribed by the Legislature and not imposed by court directive as a matter of constitutional law. (See, e.g., Florida Stat. Ann., § 453.10; Ind. Stat. Ann., § 40-2412; New Jersey Stat. Ann., 34:13B-23; 43 Pa. Stat., § 213.13, subd. [h]; Wis. Stat. Ann., § 111.60, subd. [3].)