**Garbin v. Brentzel**

*Raymond F. Sekula,* for plaintiffs.
*Costello & Snyder,* for defendants.

MIHALICH, J., January 27, 1972.—This case comes before the Court en banc for consideration of plaintiffs' motion for a summary judgment under Pennsylvania Rules of Civil Procedure 1035.

Plaintiffs commenced this action by a complaint in mandamus, demanding that the defendants implement and put into effect certain provisions of an award made by a board of arbitration. This award was made by a board of arbitration impaneled pursuant to the Act of June 24, 1968, No. 111, 43 PS §§217.1 to 217.10. The provisions of this award, which are in contention, are as follows:

3. HOURS OF WORK AND SHIFT ASSIGNMENTS: All policemen shall work eight (8) consecutive hours which shall constitute a day's work, and forty (40) hours shall constitute a week made up of five (5) consecutive eight (8) hour days. All policemen shall receive pay at the rate of time and one-half for all time spent in excess of forty (40) hours in any work week. The work week is defined as beginning with the first shift on Sunday (12:01 A.M.), and ending with the last shift on Saturday.

"Shift assignments for policemen shall be made generally in recognition of seniority and specifically overtime shift assignments for all policemen will be given to the regular policemen on the basis of seniority.

"7. FALSE ARREST INSURANCE: The Township shall provide false arrest insurance for all policemen, with minimum coverage of One Hundred Thousand and 00/100 ($100,000.00) Dollars.

"10. All other conditions of work and benefits not in conflict with this AWARD shall continue as presently in force."

Generally, the Act of June 24, 1968, no. 111, supra, hereinafter referred to as the act, gives the right to public employes (in the case at bar, the public employes are policemen from the Borough of Irwin) to bargain collectively with the public employer concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits. To involve any impasse in the collective bargaining procedure, the act provides for a board of arbitration, whose decision is final.

Plaintiffs' motion for summary judgment is based on the record, which consists of the complaint in mandamus, defendants' answers, written interrogatories and the answers to said interrogatories, and plaintiffs' affidavit in support of the motion for summary judgment. This record reveals that defendants are refusing to implement the above quoted portions of the award because they believe these determinations and conditions are outside of the scope of authority of the arbitrators.

The arbitrators' scope of authority is the deciding factor to the issues at bar. The board of arbitration is a creature of the legislature and its authority is limited to the powers legislatively created and as defined by our appellate courts. The act does assist us by defining the broad categories which the arbitration board may consider and act upon. These broad categories are as follows:

a. Terms and conditions of employment.

b. Compensation.
c. Hours of working.
d. Working conditions.
e. Retirement.
f. Pensions.
g. And other benefits.

In determining whether the arbitration board in this case acted within their permissive latitude, this court has the advantage of certain guidelines prescribed by the Supreme Court of Pennsylvania in the case of Washington Arbitration Case, 436 Pa. 168, 259 A. 2d 437 (1969). This case decided that the arbitration board could not direct a public employer to pay premiums for hospital insurance for families of its employes. The Pennsylvania Supreme Court, in the aforementioned case, enunciated the following pertinent guidelines at pages 176-177:

". . . we are of the opinion that such panels may not mandate that a governing body carry out an illegal act. . . . the scope of the submission to the arbitrators . . . *is* limited to conflicts over legitimate terms and conditions of employment. . . . The essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily. We emphasize that this does *not* mean that a public employer may hide behind self-imposed legal restrictions. An arbitration award which deals only with proper terms and conditions of employment serves as a mandate to the legislative branch of the public employer, and if the terms of the award require affirmative action on the part of the Legislature, they must take such action, if it is within their power to do so."

Item No. 3 in the award which is entitled "HOURS OF WORK AND SHIFT ASSIGNMENTS:" does relate to and come within the authorized categories for action

by a board of arbitration. Item No. 3 relates to hours of work and compensation, and therefore relates to a conflict over legitimate terms and conditions of employment. Furthermore, Item No. 3 is requiring the public employer to do that which it could do voluntarily. For these reasons, it is the opinion of this court that the mandates set forth in Item No. 3 come within the scope of authority of the board of arbitration and are therefore binding upon defendants.

In resolving the legality and propriety of Item No. 7 of the award entitled "FALSE ARREST INSURANCE:", this court finds the determination of the Washington Arbitration Case, supra, very helpful. The court held that the arbitration board's mandate upon the public employer to pay hospitalization insurance premiums for families of its employees was not within the board's scope of authority. The general basis of this determination was that there was no statutory authority for the public employer to voluntarily pay such premiums, regardless of the board's mandate. Also of interest and significance is the fact that subsequent to this decision, the legislature enlarged the insurance provision of the Third Class City Code to encompass the payment of such premiums.

Following the same rationale, this court searched for statutory authority which would permit the defendant-borough to purchase false arrest insurance. The pertinent provision in the Borough Code is as follows:

"(37) OTHER INSURANCE. To appropriate such amount as may be necessary to secure insurance or compensation for volunteer firemen of companies duly recognized by the borough, by motion or resolution, killed or injured while going to, returning from, or attending fires, or while performing their duties as special fire police. To make contracts of insurance with any insurance company, association or exchange,

authorized to transact business in the Commonwealth, insuring borough employes, or any class, of classes thereof, or their dependents, under a policy or policies of insurance covering life, health, hospitalization, medical and surgical service and/or accident insurance, and to contract with any such company, granting annuities or pensions, for the pensioning of borough employes, or any class, or classes thereof, and to agree to pay part or all of the premiums or charges for carrying such contracts, and to appropriate moneys from the borough treasury for such purposes. To make contracts with any insurance company, association or exchange, authorized to transact business in this Commonwealth, insuring any public liability of the borough, and to appropriate moneys from the borough treasury for such purpose": 53 PS §46202 (37).

There appears to be no statutory authority which would permit the defendants to voluntarily purchase false arrest insurance. For this reason, we must abide by the precedent set forth in the Washington Arbitration Case, supra, in holding that:

". . . . the plain meaning of *53 P. S. §46202 (37)* makes it illegal for the *borough* to comply fully with the arbitration award. We therefore hold that the panel committed an excess in exercise of power and we vacate that portion of the award directing the *borough* to pay *false arrest* insurance premiums . . ." (Page 179. The underlined words indicate substitution of words appropriate to the case at bar. The Washington Arbitration Case dealt with a third class city and the case at bar concerns a borough.)

For the reasons set forth above, the arbitration award is modified to exclude Item No. 7 which provides for the purchase of false arrest insurance, and the defendants are directed to implement the arbitration award in its modified form.

The court will therefore enter the following order:

## ORDER OF COURT

And now, to wit, April 28, 1972, upon motion of Alan K. Berk, solicitor for the Borough of Irwin and individual defendants in the above captioned case and Raymond F. Sekula and Nick S. Fisfis, attorneys for plaintiffs above and for good cause shown; to wit, that the parties have amicably compromised, resolved and settled their differences not in strict accordance with the terms and provisions of the honorable court's opinion and decree of January 27, 1972, and for the further reason that to allow the honorable court's opinion and decree of that date to remain in full force and effect on the docket may adversly affect future negotations concerning compensation, hours, working conditions, retirement and pensions plans and other benefits during collective bargaining by and between the parties hereto, it is, therefore, ordered, adjudged and decreed that the decree and opinion upon which it was founded dated January 27, 1972, be and is hereby vacated, hereinafter having no force and affect as though the same had never been written and filed.