## CITY OF SCRANTON

v.

## FIRE FIGHTERS LOCAL UNION NO. 60, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2011.

Decided April 4, 2011.

Stephen J. Holroyd, Philadelphia, for appellant.

Richard M. Goldberg, Kingston, for appellee.

BEFORE: PELLEGRINI, Judge, and BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge BUTLER.

This appeal, arising out of a grievance arbitration award issued on remand (Remand Award), involves the City of Scranton (City) and its fire fighters. The International Association of Fire Fighters, Local Union No. 60 (Union) again challenges the applicability of the Municipalities Financial Recovery Act (Act 47)[1] to an arbitration award issued under the Policemen and Firemen Collective Bargaining Act (Act 111).[2] Here, the Union appeals from an order of the Court of Common Pleas of Lackawanna County (trial court) that granted the City's petition to vacate the Remand Award. The trial court determined that the Arbitrator exceeded his authority by sustaining the grievance based on a "binding past practice" eliminated from the parties' past collective bargaining agreement (CBA) by the City's current Act 47 recovery plan (2002 Recovery Plan), and this Court's decision in *City of Scranton v. Fire Fighters Local Union No. 60, of the International Ass'n of Fire Fighters, AFL–CIO*, 964 A.2d 464 (Pa.Cmwlth.2009) (*Scranton Fire Fighters (2009)*), appeal granted, 606 Pa. 190, 995 A.2d 1180 (2010). Upon review, we affirm.

## I. Background

In January, 1992, the Department of Community and Economic Development

---

1. Act of July 10, 1987, P.L. 246, *as amended,* 53 P.S. §§ 11701.101–11701.501.

2. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10.

(DCED) determined the City to be a financially distressed municipality for purposes of Act 47. The City is currently operating under its third recovery plan.[3]

Chapter II–B of the 2002 Recovery Plan (Labor Relations, Cost Containment, and Related Provisions)[4] includes the following provisions:

> 1. *Management Rights. The City shall have the right to determine the organizational structure and operation of each Department including, but not limited to, the right to determine and change job duties for each position, the right to determine and change schedules for each employee, and the right to assign work to any employee. Any provision in any [CBA] which is inconsistent with, or which interferes with, the rights of the City as set forth above, shall be eliminated to the extent of such inconsistency or interference, and the City's management rights, as set forth above, shall not be the subject of any grievance procedure or arbitration clause in any [CBA] between the City and any of its unions.*
>
> . . . .
>
> 7. *Elimination of Minimum Manning.* Any provision of any [CBA] between the City and any of its Unions concerning minimum manning requirements for any particular bargaining unit, shift, platoon, job classification, specialization or position shall be eliminated. The City shall have the sole right to determine the number of personnel employed and utilized by the City. Further,

the City shall have the right to layoff any employees for economic or any other reasons, without limitation.

> . . . .
>
> 16. *Elimination of Past Practices. Any provision or clause in any [CBA] which protects past practices, or any rights which are not specifically set forth in the [CBAs], shall be eliminated. The Unions shall be given the opportunity to identify and negotiate any specific practices or rights which they would like to preserve and have included in future [CBAs].*

Reproduced Record (R.R.) at 226–32 (emphasis added).

Further, Section II–B(1) of the 2002 Recovery Plan's *"Provisions Specifically for the Fire Department," ("Organization and Scheduling "),* pertinently provides:

> The City shall reorganize its Fire Department in order to more efficiently deploy fire personnel.
>
> . . .
>
> *It shall be the sole discretion of the City to determine the number and type of apparatus to be employed by the City* as well as the number of fire companies and fire stations.

*Id.* at 233–34 (emphasis added).

In *Scranton Fire Fighters (2009),* we modified the parties' 2006 interest arbitration award (2006 Interest Award), which became effective January 1, 2003, to include, among other items, the above provisions of the 2002 Recovery Plan.[5]

---

3. A recovery plan takes into account a number of factors relevant to alleviating the financially distressed status of the municipality. Section 241 of Act 47, 53 P.S. § 11701.241. Once a recovery plan is adopted, the municipality must follow its recommendations or risk such penalties as the withholding of certain Commonwealth funds. Section 251, 53 P.S. § 11701.251. Further, "[a] CBA or arbi-

tration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions." Section 252, 53 P.S. § 11701.252.

4. *See* Reproduced Record (R.R.) at 226–46.

5. In *City of Scranton v. Fire Fighters Local Union No. 60,* 8 A.3d 930 (Pa.Cmwlth.2010) *(Scranton Fire Fighters (2010)),* we modified

Turning to the present matter, in *Fire Fighters Local No. 60, of the International Association of Firefighters, AFL–CIO v. City of Scranton,* 937 A.2d 600 (Pa. Cmwlth.2007) *(Scranton Fire Fighters (2007)),* we reviewed the facts giving rise to the grievance at issue. We noted that the parties' 1996–2002 CBA (1996 CBA) included, in part, the following provisions:

### ARTICLE VIII
### WAGES

. . . .

8. All past agreements between the parties, all prior arbitration awards between the parties including all of the provisions of said agreements and awards, *and all of the past practices of the City of Scranton which inure to the benefit of the bargaining unit shall be continued, and are hereby incorporated by reference herein as though the same were fully set forth at length, and are hereby made a part hereof, except as the same are specifically modified herein.*

. . . .

### ARTICLE XIX
### SAFETY AND HEALTH

1. *The City and the Union shall cooperate in the area of safety.* Periodic on-duty safety meetings shall be held and safety training shall be emphasized.

*See Scranton Fire Fighters (2007),* 937 A.2d at 601–02 (emphasis added).

The 1996 CBA expired on December 31, 2002. Prior to January, 2004, the Fire Department's standard deployment of personnel and apparatus for responding to automated alarms (alarms triggered by a device; no human prompt) consisted of two engine companies, one rescue company, one truck company and a supervisor's vehicle. This deployment usually involved a total of 13 fire fighters. The City used this deployment in responding to automated alarms for the past 20 years.

However, the Department did not follow this deployment when the City experienced inclement weather and hazardous driving conditions due to ice and snow. In such instances, the City reduced deployment from two engine companies to one, deploying a total of 10–11 fire fighters. Such occasions were rare.

In January, 2004, the City, through the fire chief, unilaterally issued a series of memoranda reducing the standard deployment for automated alarms. However, the City did not immediately implement the new policy or notify the Union of it. In January, 2005, following a reduced deployment for inclement weather, the City began implementing the new policy. At that time, the Union contacted the fire chief, who then informed the Union of the change.

In 2005, during an extended period of litigation regarding a CBA to replace the expired 1996 CBA, the Union filed an "automated alarm response" grievance under Article XIX (Safety and Health) and the past practice provisions in Section 8 of Article VIII (Wages) of the 1996 CBA. Following a hearing during which the parties presented evidence regarding fire fighter safety, past practices and a study of automated alarms, the Arbitrator issued a decision denying the grievance.[6] He did not find a violation of either Article XIX or Article VIII, Section 8 of the 1996 CBA. The Arbitrator found insufficient evidence to determine that a past practice of deploying two engine companies to an automated alarm originated from a mutual

---

the parties' 2008 interest arbitration award, effective November, 2008, to again include the above provisions.

6. *See* Arbitrator's Dec., 08/24/06, at 1–14; R.R. at 75–89.

agreement between the parties rather than mere happenstance or the City's exercise of a managerial prerogative.

The Arbitrator noted 98–99% of all automated alarms are false and that eliminating one responding engine company, which results in sending 10–11 fire fighters instead of 13, did not compromise fire fighter safety in a significant way. He also determined the City did not violate any contractual mandate by not discussing the modification with the Union before implementing it. The Union then filed a petition to vacate Arbitrator's award, which the trial court denied. Thereafter, the Union appealed to this Court.

In our first decision in this matter, we determined that the Arbitrator's decision, based in significant part on the origin of the past practice, an issue not addressed or contemplated by the parties, failed to comply with standards of fundamental fairness required for due process. *Scranton Fire Fighters (2007).* Accordingly, we remanded to the trial court for further remand to the Arbitrator "to provide the parties with the opportunity to present evidence concerning the origin of the practice at issue." *Id.* at 606.

On remand, the Arbitrator held another evidentiary hearing. Thereafter, in August, 2009, more than seven months after our decision in *Scranton Fire Fighters (2009)* modifying the 2006 Interest Award to include the provisions of the 2002 Recovery Plan set forth above, the Arbitrator issued his Remand Award finding the automated alarm response practice originated from a mutual agreement in the negotiations that resulted in the 1996 CBA. *See*

Arbitrator's Remand Dec., 08/12/09, at 1. Citing the "past practices" language in Article VIII, Section 8 of the 1996 CBA, Arbitrator determined the past automated alarm response practice is binding and subject to change only by mutual agreement. *Id.* Therefore, Arbitrator sustained the grievance effective as of the date of the Remand Award. *Id.*

■ The City then filed a petition to vacate the Remand Award. The trial court granted the petition, noting our decision in *Scranton Fire Fighters (2009)* "specifically eliminates protection of past practices" by modifying the 2006 Interest Award, retroactively to January 1, 2003, to include Section II–B(16) of the 2002 Recovery Plan. Trial Ct., Slip. Op., 05/25/10, at 7. Therefore, the trial court held that the Arbitrator exceeded his powers by specifically relying on the "past practice" language of Article VIII, Section 8 of the 1996 CBA and basing the Remand Award on an eliminated past practice. *Id.* The Union appeals.[7]

## II. Issues

The Union states six issues for review. It argues: (1) the trial court erred in concluding that the Arbitrator's failure to consider our decision in *Scranton Fire Fighters (2009)* warrants vacatur of the Remand Award; (2) the trial court erred in concluding that the Arbitrator exceeded his authority; (3) the trial court deviated from the long-established deference to Act 111 arbitration awards; (4) Section 252 of Act 47 does not apply to arbitration awards; (5) an Act 111 arbitration award is a mandate to the City's lawmaking body

---

7. Appellate review of an Act 111 arbitration award is in the nature of narrow *certiorari*. It is limited to issues regarding: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceed his powers; and (4) deprivation of constitutional rights. *City of Phila. v. Int'l Ass'n of Firefighters, Local 22*, 606 Pa. 447, 999 A.2d 555 (2010); *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995).

compelling legislative action such as amendment of the 2002 Recovery Plan; and, (6) even assuming Section 252 of Act 47 applies to arbitration awards, Act 47 addresses economic conditions, and it does not apply to a non-economic subject.

## III. Discussion

### A. *Scranton Fire Fighters (2009)*

#### 1. Argument

The Union first contends the trial court erred in vacating the Remand Award based on its determination that Arbitrator erred as a matter of law by failing to consider our opinion in *Scranton Fire Fighters (2009)*, filed in January, 2009. The last paragraph of the trial court's opinion reads:

> This Court finds that [the] Arbitrator ... exceeded his authority by relying on language which the Commonwealth Court eliminated from the [CBA]. The [CBA] between the [Union] and the City was modified by the Commonwealth Court in its January 29, 2009 Opinion and Order [in *Scranton Fire Fighters (2009)* ], which was prior to the April 28, 2009 hearing before [the] Arbitrator. *He made an error of law, and therefore exceeded his jurisdiction by failing to consider the modifications of the Commonwealth Court.*

Trial Ct., Slip. Op., 05/25/10, at 7 (emphasis added).

Citing *City of Philadelphia v. International Association of Firefighters, Local 22*, 606 Pa. 447, 999 A.2d 555 (2010) *(IAFF Local 22)*, the Union argues that the trial court erred in determining that the Arbitrator lacked jurisdiction to hear the grievance in this case. In *IAFF Local 22*, the Supreme Court noted there is often confusion in appellate decisions between an arbitration board's jurisdiction and its authority. Jurisdiction relates to the arbi-

tration board's power under Act 111 to hear and determine disputes between employers and police or fire fighters arising out of the collective bargaining process.

"By contrast, the excess of powers prong of narrow certiorari focuses upon the particular action an arbitration board took in resolving an Act 111 dispute and asks whether the action was authorized." *Id.* at 463, 999 A.2d at 564. Whether a decision maker in an adjudicatory process acts in excess of the exercise of power "depends fundamentally on whether he has gone outside the boundaries of his authority." *Id.* (quoting *Washington Arbitration Case*, 436 Pa. 168, 174, 259 A.2d 437, 441 (1969)). "No adjudicatory body has unlimited discretion. At the very least, each and every adjudicator is bound by the Constitution of the United States; and most are bound by even tighter strictures." *Id.*

Here, the Union acknowledges the trial court presumably meant to say Arbitrator "exceeded his powers," as opposed to "lacked jurisdiction." Nevertheless, the Union asserts, an "error of law" can never be the basis for vacating an arbitration award under the narrow *certiorari* standard.

The City counters the trial court properly determined that the Arbitrator exceeded his authority by failing to consider this Court's decision in *Scranton Fire Fighters (2009)*. An arbitration award can only require a public employer do that which it could do voluntarily. *Id.* When an arbitration award goes beyond this limitation, it is subject to review under the narrow *certiorari* standard for excess of the arbitrator's powers. *Id.* An arbitrator acts in excess of his powers when he orders a city to act in a manner inconsistent with its recovery plan. *Id.; Fraternal Order of Police, Lodge No. 19 v. City of Chester*, 845 A.2d 230 (Pa.Cmwlth.2004) *(FOP Lodge No. 19)*.

Here, the City argues, the chronology of the case is very important. *Scranton Fire Fighters (2009)* modified the parties' 2006 Interest Award, which became effective January 1, 2003, by, among other things, incorporating into the award Section II–B(16) of the 2002 Recovery Plan, which eliminated past practices. Further, the Union did not seek to identify or negotiate any specific practices they would like to preserve and include in future CBAs. Thus, the City urges, the Arbitrator clearly exceeded his powers by basing the Remand Award on past practices eliminated by the 2002 Recovery Plan and *Scranton Fire Fighters (2009)*.

The City further argues that by relying on an eliminated past practice the Arbitrator addressed issues beyond the scope of the CBA or terms and conditions of employment. *See FOP Lodge No. 19* (an arbitrator exceeds his powers when the award goes beyond the terms and conditions of employment).

Finally, the City argues that the Arbitrator, by ignoring our decision in *Scranton Fire Fighters (2009)*, deprives the City of its constitutional right to have the proceeding governed by the unequivocal mandate of an appellate court.

### 2. Analysis

■ Although the trial court determined that the Arbitrator "made an error of law" and "therefore exceeded his jurisdiction," the gist of the trial court's decision is that the Arbitrator "*exceeded his authority by relying on language which the Commonwealth Court eliminated from the [CBA]*." Trial Ct., Slip. Op., 05/25/10, at 7 (emphasis added). As discussed more fully below, the Arbitrator exceeded his authority or powers by basing the Remand Award on a past practice eliminated by Section II–B(16) of the 2002 Recovery Plan. *Scranton Fire Fighters (2009)*.

■ In *Borough of Ellwood City v. Pennsylvania Labor Relations Board*, 606 Pa. 356, 998 A.2d 589 (2010), our Supreme Court held that under Act 111, matters involving inherent managerial prerogatives are not subject to mandatory or collective bargaining. In resolving whether a particular topic is an inherent managerial prerogative or a working condition subject to collective bargaining, the proper approach is to inquire whether collective bargaining over the topic would unduly infringe on the public employer's essential managerial responsibilities.

Here, the Arbitrator noted in his initial grievance decision that but for the past practice language in the 1996 CBA, the City's response to automated alarms "*would be deemed a basic prerogative of management.*" Arbitrator's Dec., 8/24/06 at 11; R.R. at 86 (emphasis added). Given the elimination of protection of past practices, the City's response to automated alarms must be deemed a managerial prerogative not subject to collective bargaining. *Borough of Ellwood City*.

In addition, Section II–B(1) of the 2002 Recovery Plan ("*Management Rights*"), provides that the City shall have the right to determine the operation of each department, assign work to any employee, and change job duties for each position. R.R. at 226–27. The City's management rights shall not be the subject of any grievance procedure. *Id.* The "*Management Rights*" provision was part of the modified 2006 Interest Award, which itself was the result of our decision in *Scranton Fire Fighters 2009*, and it bound the parties for the period addressed in the Remand Award. The "*Management Rights*" provision authorizes the City to unilaterally modify its Fire Department's response to automated alarms. This provision also protects the City's management rights from Act 111 grievance challenges. Con-

sequently, we conclude that the Arbitrator lacked the authority to sustain the automated alarm response grievance. *Borough of Ellwood City; Scranton Fire Fighters (2009)*.

## B. Excess of Authority

### 1. Argument

In this argument, the Union contends that a labor arbitrator exceeds his authority when he mandates an illegal act or grants an award addressing issues outside the realm of the CBA or beyond the terms and conditions of employment. An arbitrator may exceed his powers if he orders a municipality to act in a manner inconsistent with its Act 47 recovery plan. *See Int'l Ass'n of Firefighters Local 1400, Chester City Firefighters v. City of Chester*, 991 A.2d 1001 (Pa.Cmwlth.2010), appeal denied, —— Pa. ——, 14 A.3d 830 (2011); *FOP Lodge No. 19*. Here, the Union urges that the Remand Award does not violate Section 252 of Act 47 because it does not violate, expand or diminish the 2002 Recovery Plan.

The Union's argument is as follows. The 2002 Recovery Plan's *"Elimination of Past Practices"* provision eliminates any *provision* or *clause* which protects past practices. However, it does not eliminate the concept of past practices or their enforceability. Here, the Union's grievance alleged a violation of the *"Safety and Health"* provision of the 1996 CBA which states, "[t]he City and the Union shall cooperate in the area of safety." R.R. at 77. In order to determine whether the City violated this provision, the Arbitrator deemed it necessary to review the past practice. Further, nothing in the 2002 Recovery Plan limits automated alarm responses to one engine company. Rather, the Plan is silent on the issue of response compliments. Therefore, the Remand Award's requirement that the City re- spond to automated alarms in a manner consistent with historical practice does not require the City to undertake any act prohibited by the 2002 Recovery Plan. Stated another way, the City is within its authority to comply with the Remand Award and respond to automated alarms as directed by the Remand Award. Thus, even assuming that the Arbitrator considered a factor which the 2002 Recovery Plan precluded him from considering, he did not order the City to do anything it could not do voluntarily. As a result, this "mere error of law" will not support a reviewing court's reversal of an Act 111 arbitration award under the narrow *certiorari* standard of review. Conversely, had the 2002 Recovery Plan prohibited any consideration of past practices, the Remand Award would violate Act 47 and the 2002 Recovery Plan.

The City responds that the 2002 Recovery Plan and this Court's decision in *Scranton Fire Fighters (2009)* specifically eliminates protection of the past practice in question. The Remand Award, however, ignored our decision in *Scranton Fire Fighters (2009)* and continued the past practice of sending two engine companies to automated alarms. The City essentially argues that the basic legal principle of *stare decisis* and the "law of the case" doctrine require Arbitrator to follow *Scranton Fire Fighters (2009)* and hold that the 2002 Recovery Plan eliminated the past practice at issue here. *See Ario v. Reliance Ins. Co.*, 602 Pa. 490, 980 A.2d 588 (2009) *(stare decisis* generally commands judicial respect for prior decisions and the legal rules contained therein).

In sum, the City essentially argues that by basing the Remand Award on an eliminated past practice, the Arbitrator exceeded his powers by issuing an award that addresses issues beyond the terms and conditions of employment. *See FOP*

*Lodge No. 19* (an arbitrator exceeds his powers in a grievance arbitration case when the award goes beyond the terms and conditions of employment).

## 2. Analysis

The trial court properly determined that the 2002 Recovery Plan, and our decision in *Scranton Fire Fighters (2009)*, *"specifically eliminates protection of past practices . . . ."* Trial Ct., Slip. Op., 05/25/10, at 7 (emphasis added).

The Union's position, that the language of Section II–B(16) of the 2002 Recovery Plan (*"Elimination of Past Practices"*) does not affect the enforceability of past practices, is unreasonable. The Union's interpretation of Section II–B(16) would essentially render it meaningless.

Further, because nothing in the 2006 Interest Award, as modified by our decision in *Scranton Fire Fighters (2009)*, specifically addresses or preserves the past automated alarm response practice, the Arbitrator exceeded his authority by addressing an issue beyond the scope of the 2006 Interest Award. *FOP Lodge No. 19.*

In addition, as discussed above, the Arbitrator noted in his first decision that the past practice of sending two engine companies in response to an automated alarm would otherwise *"be deemed a basic prerogative of management."* Arbitrator's Dec., 08/24/06, at 12; R.R. at 86 (emphasis added). Inherent managerial prerogatives are not subject to mandatory collective bargaining under Act 111. *Borough of Ellwood City.*

For these two reasons (elimination of past practices and protection of managerial rights), we agree that the Arbitrator exceeded his authority. *Borough of Ellwood City; Scranton Fire Fighters (2009); FOP Lodge No. 19.*

## C. Miscellaneous Issues Preserved for Further Appeal

The Union next contends the trial court deviated from the long-established deference to Act 111 arbitration awards by vacating the Remand Award. The Union further asserts that Section 252 of Act 47 applies to arbitration awards and argues that an Act 111 arbitration award is a mandate to the City's lawmaking body compelling legislative action such as amendment of the 2002 Recovery Plan.

Mindful of the Supreme Court's grant of the Union's petition for allowance of appeal in *Scranton Fire Fighters (2009)*, the Union raises these issues in order to preserve them for further appellate review. These precise arguments, however, were rejected by this Court in *Wilkinsburg Police Officers Association by Harder v. Commonwealth*, 129 Pa.Cmwlth. 47, 564 A.2d 1015 (1989) and, on appeal, by the Supreme Court in *Wilkinsburg Police Officers Association by Harder v. Commonwealth*, 535 Pa. 425, 636 A.2d 134 (1993) (plurality decision). Ultimately, the Supreme Court will decide these issues in its review of *Scranton Fire Fighters (2009)*.

## D. Non–Economic Subject

### 1. Argument

In its final argument, the Union contends Act 47, which is intended to address a financially distressed municipality's fiscal and economic concerns, must be limited to economic subjects. *See* Section 102 of Act 47 (purpose and legislative intent of Act 47 is "to foster fiscal integrity of municipalities"), 53 P.S. § 11701.102; Section 241 (a recovery plan's recommendations shall among other things, eliminate deficits, balance the budget, avoid fiscal emergencies), 53 P.S. § 11701.241. Citing these provisions, the Union asserts that the provisions of an Act 47 recovery plan apply only to economic subjects, not safety conditions.

The Union therefore argues the 2002 Recovery Plan's *"Elimination of Past Practices"* provision, which, according to the Union, has nothing to do with economics, should not apply to the past practice of sending two engine companies to an automated alarm, which is a safety condition.

### 2. Analysis

The Union raised a very similar argument in *Scranton Fire Fighters 2009*, which this Court rejected as follows:

> [Fire Fighters] argue that Act 47 was intended to only apply to economic terms of public employment; therefore, several provisions of the Plan which are not economic in nature are not entitled to deference under Section 252. Fire Fighters rely on the legislative intent stated in Act 47, 53 P.S. § 11701.102, and on the criteria for evaluating a municipality's financial stability set forth in Section 241 of Act 47, 53 P.S. § 11701.241.
>
> . . . .
>
> We reject Fire Fighters' argument on this issue. Having reviewed the 2002 Recovery Plan in its entirety, we are satisfied that all its provisions bear some rational relationship to cost containment and improved efficiency. . . . In the absence of express statutory limitation, there is no legal basis to distinguish between economic provisions and administrative provisions of the 2002 Recovery Plan.

964 A.2d at 474–75 (emphasis added).

Although the Supreme Court accepted an appeal in *Scranton Fire Fighters 2009*, it did not accept review of this issue. Therefore, our *en banc* decision is binding.

### IV. Conclusion

For the above reasons, we affirm the trial court's order vacating Arbitrator's Remand Award.

### ORDER

**AND NOW,** this 4th day of April, 2011, the order of the Court of Common Pleas of Lackawanna County is **AFFIRMED.**