Cheltenham Township, Appellant, *v.* Cheltenham Township Police Department, Appellee.

Argued September 10, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Samuel H. High, Jr.,* with him *Walton Coates* and *High, Swartz, Roberts & Seidel,* for appellant.

*Stanley M. Shingles,* with him *Fineman & Fineman,* for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, December 3, 1973:

For two successive years, in 1971 and 1972, collective bargaining between Cheltenham Township in Montgomery County and its police officers was unsuccessful, requiring the issues in dispute to be submitted to binding arbitration as prescribed by the Act of June 24, 1968, P. L. 237, 43 P.S. §217.1 et seq. (Supp. 1973-1974), commonly referred to as Act No. 111. Portions

of the 1971 award were challenged by the township, which are the subject of our opinion in *Cheltenham Township v. Cheltenham Police Department,* 8 Pa. Commonwealth Ct. 360, 301 A. 2d 430 (1973).

However, collective bargaining for the year 1972 reached an impasse and was arbitrated prior to our decision concerning disputed portions of the 1971 award. In this appeal, transferred to us by the Supreme Court as was the prior appeal, most of the challenged portions of the 1972 arbitration award cover the same issues in dispute in the prior appeal and our decision in the first appeal disposes of such issues.

One new issue arises out of the 1972 arbitration award which was not a subject of the 1971 award. One other subject of both the 1971 and 1972 arbitration awards also requires further comment in light of our first decision in *Cheltenham* and subsequent developments.

One of the issues producing an impasse in the 1972 collective bargaining process and submitted to binding arbitration concerned the practice of using police vehicles to pick up and deliver police officers to their homes incident to going on and off duty. The township insisted that this practice be discontinued. It was submitted to the arbitrators among other issues and the arbitration award directed that the practice be continued. This subject was a new issue in the 1972 collective bargaining process because one of the disputed issues resolved by the 1971 award (and approved by us in our first opinion in *Cheltenham* as a proper subject of collective bargaining and ultimate binding arbitration) was elimination of a residency requirement as a condition to employment provided the police officer resided not more than four miles from headquarters. Although the "record" in this appeal does not reveal it, both parties at oral argument agreed that at

the present time all police officers of the township reside in the township, a fact we believe to be a relevant and important one in determining this issue.

Appellant township asserts that the subject of the award is violative of the law governing its affairs and not within the scope of the Act which affords to policemen and firemen through their representatives ". . . the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits . . . ." (Section 1, 43 P.S.§217.1 (Supp. 1973-1974).)

Unquestionably, a plethora of subjects touching upon the employer-employe relationship between governments and their policemen and firemen will be fertile ground for dispute as to whether a particular subject is within the scope of bargainable terms and conditions of employment within the meaning of the Act. Several basic principles and guidelines, however, have already evolved as aids in quest of an answer to this question.

In *Allegheny County Firefighters, Local 1038, International Association of Firefighters v. Allegheny County*, 7 Pa. Commonwealth Ct. 81, 84-85, 299 A. 2d 60, 61-62 (1973), we said:

"Thus, all political subdivisions of the Commonwealth are constitutionally and statutorily mandated to put into effect, to the extent possible under their delegated authority, an award of an arbitration panel. 'As long as a poltical subdivision may legally perform a duty mandated by such award, it must perform such duty.' Tate v. Antosh, 3 Pa. Commonwealth Ct. 144, 153, 281 A. 2d 192, 198 (1971). 'In spite of the fact that neither the relevant constitutional provision nor the enabling legislation clearly delineates the power of the arbitration panels . . . such panels may not mandate that a governing body carry out an illegal act. We

reach this result by quite frankly reading into the enabling legislation the requirement that the scope of the submission to the arbitrators be limited to conflicts over legitimate terms and conditions of employment. Were this not so, virtually any issue could be submitted to the arbitrators under the guise of a labor conflict. Further, we fully realize that there will be issues that would be fully legitimate in the context of a private sector labor dispute which will not be legitimate in the context of a public sector labor dispute. Public employers are in many respects more limited in what they may do vis-a-vis their employees, and those limitations must be maintained. The essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily. We emphasize that this does *not* mean that a public employer may hide behind self-imposed legal restrictions. An arbitration award which deals only with proper terms and conditions of employment serves as a mandate to the legislative branch of the public employer, and if the terms of the award require affirmative action on the part of the Legislature, they must take such action, if it is within their power to do so.' Washington Arbitration Case, 436 Pa. 168, 176-77, 259 A. 2d 437, 442 (1969).

"In Washington, it was held under the laws governing third class cities that such cities are without authority to pay hospitalization insurance premiums for families of city employees, hence such a provision in an arbitration award was unenforceable." (Emphasis in original.)

Therefore, there must be excluded from the scope of the Act and necessarily outside of the definition of bargainable issues, any subject which would require the government employer to perform any duty or to take some action which is specifically or impliedly prohibited

by the statutory law governing its affairs. Such subjects are, of course, equally beyond the scope of an arbitration award.

Secondly, as *Washington* dictates, caution must be exercised in applying decisions or rulings concerning the meaning of terms and conditions of employment in the private sector to a determination of its meaning in this Act, as public employers are in many respects more limited in what they may do vis-a-vis their employers and those limitations must be maintained.

Another significant distinction must be recognized in considering mandated bargaining subjects within the private sector as guidelines to determination of such subjects within the meaning of the Act. In the private sector, having bargained in good faith, both the employer and employe are afforded the right to refuse the other party's proposal. Such is not the case under the Act in question which requires such disputed issues to be resolved by compulsory binding arbitration. Statutory denial of this freedom of choice of action on the part of the bargainers suggests a limitation upon the parameter of bargaining subjects within the meaning of the Act.

The development of the decisional law to date in this area has been limited to a determination that a particular subject of an arbitration award under the Act would or would not require the governmental employer to perform a duty or take an action prohibited by the statutory law governing its affairs. Cases cited *supra*.

In the instant case, as to this particular issue, we must determine not only whether door-to-door pickup and delivery service afforded to each policeman is violative of the statutory law governing the township but if it is not, whether it is a bargainable issue within the meaning of the Act. Appellee argues that terms and conditions of employment including "other benefits"

compel an affirmative result, particularly by application of the common definition of "benefits" as something "to be of advantage or profit to" the recipient. *The Oxford Universal Dictionary* (3rd Ed. 1955).

Within the factual context that the present members of the township police department reside within the township, we are aware of no statutory law governing the township, nor has appellant pointed to one, which would be violated in carrying out the terms of the disputed award. We specifically do not pass upon a similar award within a different factual context which might involve substantial use of police vehicles and policemen as civilian chauffeurs beyond the township's boundaries solely for the purpose of conveying off-duty police officers to their out-of-township residences. At some point any reasonable relationship of this use of police vehicles and employe manpower to the public purpose is subordinated to a predominately private use, an activity to which governmental property and manpower may not be devoted. It would be unwise and perhaps futile to attempt to fashion a rule or guideline as to when use of governmental property or manpower may be said to be utilized predominately for a private purpose in this field. We only hold in the factual context here that the statutory law governing the affairs of this township is not violated in execution of this disputed issue.

As to the second issue, it is our opinion, however, that the disputed award is outside the meaning of terms and conditions of employment as contained in the Act. There is no doubt that the required pickup and delivery service in question is of "benefit" to these township policemen within the common meaning of that word and that the service afforded is related to their employment by the township. Such would be the case in almost any conceivable subject touching upon the employer-em-

ploye relationship between a government and its police-
men. We do not believe the Legislature intended terms
and conditions of employment including "benefits" to
be so broad and all inclusive. To do so would afford
broader meaning to this language than has apparently
been accorded similar language as to mandated bargain-
able issues applicable to the private sector. Appellee
has pointed to no judicial decision or NLRB ruling,
nor has our research disclosed any, which required
good faith bargaining between employer and employe
on an issue of transportation to and from work on a
personal basis by use of employer vehicles manned by
other employes. Such a service bears no rational rela-
tionship to performance of their duties by these town-
ship policemen and reaches a subject outside the course
of their employment. An individual employe's desire to
be relieved of the personal expense of transportation to
and from work is understandable. It is not, however, a
bargainable issue as one of "other benefits" within the
meaning of the Act.

Finally, appellee would have us reconsider our first
opinion in *Cheltenham* with respect to the 1971 award
reducing eligibility for retirement from fifty-five to
fifty-three years of age. We set aside this award as
being in contravention of express statutory require-
ments for the reasons stated. Appellee attached to its
brief in this appeal a document purporting to be an ac-
tuarial study which it is asserted would support the
township's power and authority to provide for such a
reduced retirement age when undergirded by such a
study. As we understand it, this document was not
submitted to the arbitrators incident to the 1972 award
nor is it part of the record in this appeal.

We shall not reconsider our first opinion in *Chelten-
ham* nor recognize the attachment to appellee's brief as
part of the record of this appeal for any reason.

## ORDER

Now, December 3, 1973, those portions of the 1972 Award of the Board of Arbitrators identical to the 1971 Award of the Board of Arbitrators and struck down by our Order in *Cheltenham Township v. Cheltenham Police Department, supra,* are hereby likewise excluded from the 1972 Award as is Article V requiring the township to continue use of police vehicles to pick up and deliver policemen to their residences.

---

### CONCURRING AND DISSENTING OPINION BY JUDGE CRUMLISH, JR. :

I agree with the majority's determination that any subject which would require a government employer to perform a duty specifically or impliedly prohibited by statutory law governing its affairs is excluded from the scope of Act 111 and therefore necessarily outside the definition of bargainable issues.

However, I must respectfully disagree with the majority's conclusion that the use of police vehicles to pick up and deliver police officers at their home incident to going on and off duty is not a bargainable issue.

Act 111 affords policemen and firemen through their representatives ". . . the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits. . . ." 43 P.S. §217.1.

The majority admits that the required pickup and delivery service in question is of "benefit" to the policemen within the common-sense meaning of that word[1] and that this service is related to their employ-

---

[1] Since the term "benefit" is not defined in Act 111, it must be interpreted and applied according to its common and approved usage. *See* Statutory Construction Act of 1972, Act of December 6, 1972, P. L.    (Act No. 290), 1 Pa. S. §1903.

ment by the township. Therefore, I believe, in this case, that the disputed award is within the meaning of terms and conditions of employment and should be sustained.