The City of Jeannette *v.* Fraternal Order of Police Jeannette Lodge No. 24. The City of Jeannette, Appellant.

Argued September 13, 1976, before President Judge BOWMAN and Judges MENCER and BLATT, sitting as a panel of three.

*George A. Conti, Jr.,* for appellant.

*John W. Peck,* with him *George, Wasson, Sekula, Kovalchick, Irwin & Peck; Raymond F. Sekula;* and *Thomas A. Kovalchick,* for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, November 18, 1976:

This appeal calls upon us to again review an arbitration award issued pursuant to the Act of June 24, 1968, P.L. 237, 43 P.S. §217.1 et seq. (commonly referred to as Act No. 111), which granted to police officers expanded benefit rights and which appellant,

City of Jeannette, asserts to be violative of the statutory law on the subject.[1]

In *City of Reading v. Reading F. O. P. No. 9*, 15 Pa. Commonwealth Ct. 344, 325 A.2d 675 (1974), we said:

> The general subject of pensions is a bargainable issue under Act No. 111, being one of the enumerated subjects encompassed within its provisions. Thus, the general subject of pensions, upon an impasse in bargaining, becomes a proper subject of binding arbitration subject to the limitation that such an award may not require the governmental employer to perform a duty or take an action specifically or impliedly prohibited by the statutory law governing its affairs. Washington Arbitration Case, 436 Pa. 168, 259 A.2d 437 (1969); Cheltenham Township v. Cheltenham Township Police Department, 11 Pa. Commonwealth Ct. 348, 312 A.2d 835 (1973); Allegheny County Firefighters, Local 1038, International Association of Firefighters v. Allegheny County, 7 Pa. Commonwealth Ct. 81, 299 A.2d 60 (1973).

15 Pa. Commonwealth Ct. at 347, 325 A.2d at 676.

In the instant case, an impasse in bargaining having occurred, several issues were submitted to binding arbitration. On the subject of pensions, appellant's police officers had demanded retirement rights after twenty years of service regardless of age, and, as thus posed, this demand was submitted to the arbitrators. Without making any findings or discussion a majority of a three member panel of arbitrators simply "Granted" this demand in January, 1976. In force at that time was an ordinance of the appellant

---

[1] Allowed pursuant to Pa. R.J.A. No. 2101, replaced as of July 1, 1976, Pa. R.A.P. 703, by which rule this Court enjoys only the right to entertain petitions for allowance of appeals from arbitration awards involving state government employees.

requiring, for pension eligibility, twenty-two years of service and a minimum age of fifty-seven years.

Appellant first argues that this award violates Section 4302 of The Third Class City Code (Code), Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §39302, which requires, for police pension eligibility, a minimum continuous service of not less than twenty and "when any minimum age is prescribed, a minimum age of fifty years."

We disagree and view our decision in *Reading, supra*, as dispositive of this issue.

> The statutory law relied upon by appellant does not itself preclude the City . . . from giving effect to the disputed arbitration award. The only statutorily imposed requirement for police pensions is that of continuous twenty year service. The statutory option afforded to such cities to also fix a minimum age requirement, in which event it must be that of fifty years, does not, in our opinion, operate to make the disputed award unlawful or inoperative.

15 Pa. Commonwealth Ct. at 347, 325 A.2d at 676.

In *Reading, supra,* the city had not by ordinance established a minimum age requirement whereas here appellant has done so. However, we do not believe this to be a controlling distinction. Appellant would not violate statutory law by deleting the age requirement from its ordinance in giving effect to the arbitration award. Section 7 of Act No. 111, 43 P.S. §211.7 so provides.

Alternately, appellant contends that the disputed award would require it, in funding the cost of the award, to violate Section 4305 of the Code, 53 P.S. §39305, which provides that a city shall pay annually to the police pension fund

> a sum of money sufficient to meet the requirements of and to maintain such police pension

fund which sum in no year shall be less than one-half of one per centum nor more than three per centum of all taxes levied by the city, other than taxes levied to pay interest on or extinguish the debt of the city or any part thereof.[2]

Whether appellant can meet the requirements of the award in terms of costs and continue to maintain its police pension fund without violating the statutorily prescribed maximum contribution it may make to the fund cannot be absolutely determined from the record before us. The majority of the arbitrators simply "Granted" the demand even though the only evidence before them which was presented by appellant, while not conclusive on this issue, does disclose the pension fund to be woefully actuarially unsound with the future possibility of the fund being unable to pay benefits as they accrue from reserves and current contributions.

On the record before us we are afforded only a limited and meager insight into not only the serious financial problems faced by the City and the police pension fund, but more importantly whether the additional costs of the disputed award can possibly be met by the City without it violating the maximum annual contribution it may make to the fund under Section 4305 of the Code, 53 P.S. §39305.

A portion of an actuarial report of the City of Jeannette Police Pension Fund for the calendar year 1974 discloses an unfunded liability of $1,028,582 against assets of $528,073. This report recommends increasing to $56,564 the annual contribution by the City to simply maintain the actuarial status of the fund at then current levels, and an annual contribu-

---

[2] This statute contains a proviso allowing in excess of 3% to be contributed to cover benefits to widows of retired policemen or of those killed or who die in service.

tion of $85,658 as minimal to amortize the unfunded liability over a twenty year period. Contrasted with this report is a summary sheet of the proposed budget for the City for the calendar year 1976 disclosing estimated receipts from all taxes of $669,000 with estimated debt service expenditures of $141,500. Three percent of the difference produces $15,825, the ostensible maximum annual contribution which may be made by the City to the police pension fund. Absent such other critical factors as the annual costs of the disputed award, the policemen's contributions to the fund at present levels, or maximum allowable levels, and the average annual receipt by the fund of state contributions, the only apparent certainty is that the city is already contributing to the police pension fund an annual contribution in excess of that prescribed by law. This is apparently being done to maintain or improve the actuarial level of the fund. Without an increased contribution to meet at least the annual costs of the disputed award the unfunded liability can only deteriorate with the ultimate possibility of the insolvency of the fund in not meeting current benefit payments out of current receipts.

The actuarial unsoundness of the vast majority of pension funds of Pennsylvania municipalities is a matter of grave concern to public officials, the beneficiaries of the funds and the municipal taxpayers. The legislature has expressed its concern as to some of these pension funds in requiring an actuarial feasibility study incident to a reduction in age eligibility for retirement. Where such a requirement is legislatively mandated we have held that an arbitration award under Act No. 111 reducing an age requirement without such a study being made and considered was violative of positive statutory law and we set aside the award. *Cheltenham Township v. Cheltenham Po-*

*lice Dept.,* 8 Pa. Commonwealth Ct. 360, 301 A.2d 430 (1973).

We can do no less here. Although the applicable statutory law in the present case contains no similar provision, it does flatly mandate that the maximum contribution a third class city may make to a police pension fund may not exceed three percent of tax revenues with an additional contribution to cover certain widow benefits. Section 4305 of The Third Class City Code, 53 P.S. §39305. Where, as here, an arbitration award eliminating a minimum age requirement must necessarily increase the cost of pension benefits under circumstances in which the city is already contributing a sum equal to or in excess of its maximum contribution for the purpose of maintaining or enhancing the actuarial soundness of the fund, such an award must be set aside as necessarily entailing a violation of an express statutory limitation upon the city's maximum contribution. Under the applicable statutory law a minimal requirement to support such an award requires proof that the city, to meet the costs of an award reducing or eliminating an age requirement, will not thereby be required to contribute to a police pension fund in excess of the maximum annual contribution permitted by statute. This record lacks such proof.

In closing, we state that we are not here passing upon the power of a third class city to exceed the statutorily prescribed maximum contribution to a police pension fund to maintain or enhance its actuarial soundness. This issue is not before us.

#### ORDER

Now, November 18, 1976, the arbitration award (No. 4) granting policemen of the City of Jeannette retirement from the police force with full benefits after a straight twenty (20) years of service is hereby set aside.