Fraternal Order of Police, E. B. Jermyn Lodge No. 2, by Thomas P. Tolan, Jr., President, Trustee ad litem, Appellant *v.* Eugene F. Hickey, Mayor of the City of Scranton et al., Appellees.

Argued April 5, 1979, before Judges MENCER, ROG-ERS and CRAIG, sitting as a panel of three.

*Anthony P. Moses,* for appellant.

*Ralph J. Iori, Jr.,* with him *John J. Brazil,* for appellee.

238

OPINION BY JUDGE MENCER, June 5, 1979:

A specific clause in the employment contract between the City of Scranton and members of its police force reads as follows: "That, the Chief of Police, and in the event the City shall employ a Commissioner of Police, or Superintendent of Police or some other similar plan, the person who fills the position, must come from the ranks of Scranton Police Department."

This clause was agreed upon as of January 1, 1973 as part of a 2-year contract between the parties and was continued in effect through 1978 by binding arbitration awards. In January of 1978, Eugene F. Hickey, newly elected Mayor of the City of Scranton, appointed Paul Durkin as Superintendent of Police for the City of Scranton. Mr. Durkin is a veteran of 20 years' service with the Federal Bureau of Investigation, and it is conceded in these proceedings that he is "a fine man and competent police chief." Nevertheless, Mr. Durkin had not, prior to his appointment by Mayor Hickey, been a member of the Scranton Police Department.

The Fraternal Order of Police, E. B. Jermyn Lodge No. 2, by Thomas P. Tolan, Jr., President, Trustee ad Litem (plaintiff) filed an action in mandamus to enforce the clause in question. The named defendants, being the City of Scranton, the Mayor, members of City Council, the City Controller, and City Treasurer, filed an answer to the complaint in mandamus. Thereafter, the plaintiff filed a motion for peremptory judgment and, after argument before the Court of Common Pleas of Lackawanna County, an order was entered June 29, 1978 dismissing plaintiff's complaint in mandamus. This appeal followed and we affirm.

The resolution of labor disputes between political subdivisions of this Commonwealth and their police departments was the objective of the legislature when

it enacted the Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §217.1 et seq. (Act 111). However, the defendants assert that the clause in dispute here is not within the scope of Act 111, which affords to policemen, through their representatives, "the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits. . . ." Section 1, 43 P.S. §217.1.

We are in accord with the trial court's determination that the legislature did not intend the phrases "terms and conditions ·of employment" and "other benefits" to allow a given group of employees the right to bargain that their highest supervisory person must be selected from their own preselected employee group. Such a provision as under challenge here is invalid and not a bargainable issue, since it involves a matter outside the course of the policemen's employment. *Cheltenham Township v. Cheltenham Township Police Department,* 11 Pa. Commonwealth Ct. 348, 312 A.2d 835 (1973).[1]

Our holding does not prohibit a mayor of the City of Scranton from selecting a superintendent of police from within the ranks of the Scranton Police Department. However, to require that the superintendent of police must come from a preselected group would be contra to public policy and therefore invalid. *Allegheny County Firefighters Local 1038 v. Allegheny*

---

[1] The *Cheltenham* case raised the question of whether the practice of using police vehicles to pick up and deliver officers to their homes, incident to going on and off duty, was a bargainable issue within the ambit of Act 111. We held that such a service was not an "other benefit" within the intended legislative meaning of that phrase because it bore no rational relationship to the performance of a policeman's duties and reached a subject outside the course of the police officer's employment.

*County,* 7 Pa. Commonwealth Ct. 81, 299 A.2d 60 (1973).[2] Such a requirement would be outside the scope of such items as compensation, hours, working conditions, retirement, or pension. We cannot find that the legislature intended the phrase "other benefits" to include the restriction on the employer, relative to selection of a superintendent of police, that we are confronted with here. A limitation on the Mayor's power to select a superintendent of police which requires him to select only from the membership of the employee group bears no rational relationship to the performance of a policeman's duties, nor is it an employee *benefit* within the intended legislative meaning of that word. *See City of York v. Reihart,* 475 Pa. 151, 379 A.2d 1328 (1977).

Our Supreme Court, in *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969), held that it was illegal for the City of Washington to pay hospitalization insurance premiums for the members of the family of each member of its police department. Similarly, we hold here that it was illegal to prevent, by the terms of a negotiated contract, the selection by the Mayor of the City of Scranton of a superintendent of police from outside the ranks of the city police department. Such a restrictive provision falls outside the ambit of the bargainable issues authorized by Act 111. *Cheltenham Township v. Cheltenham Township Police Department, supra.*

Order affirmed.

---

[2] The *Allegheny County Firefighters* case raised the question of whether a provision in a collective bargaining contract covering firemen, making union membership or payment of union dues a condition of continued employment, was valid. We held that a governmental body can neither agree to, nor be required to implement, such a provision. Further, we held that a provision establishing a grievance procedure culminating in compulsory arbitration was not a proper subject for collective bargaining under Act 111.

ORDER

AND NOW, this 5th day of June, 1979, the order of the Court of Common Pleas of Lackawanna County, under date of June 29, 1978, dismissing the complaint in mandamus filed by the Fraternal Order of Police, E.B. Jermyn Lodge No. 2, by Thomas P. Tolan, Jr., President and Trustee ad Litem, and docketed in that court at No. 710 March Term, 1978, is hereby affirmed.

---

DISSENTING OPINION BY JUDGE CRAIG:

I must dissent, with some reluctance, in view of the present state of the law and this record.

Although I seriously question the soundness of a collective bargaining agreement provision which requires that a police chief be chosen only from the ranks of the department he is to lead, I am unable to avoid the conclusion that such a matter—the opportunity to occupy the highest position—does indeed relate to and concern the "terms and conditions of . . . employment. . . ." Act of June 24, 1968, P.L. 237, *as amended,* (Act 111) Section 1, 43 P.S. §217.1. To make the top job exclusively promotional is a benefit which clearly pertains to the terms, conditions and benefits of employment in a most direct way.

Our decision in *Cheltenham Township v. Cheltenham Township Police Department,* 11 Pa. Commonwealth Ct. 348, 312 A.2d 835 (1973) is of no help here; the holding there, involving the use of police vehicles to transport *off-duty* police officers to and from work, concerned a matter which was, by its very nature, outside the course of employment, as was the matter of medical insurance for the *non-policemen* in *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969).

Moreover, unsound as this restriction on police chief selection is—particularly if it were to be adopted for a very small department—it is not for us to say

that it so contravenes public policy as to be illegal, especially when, as here, the city voluntarily agreed to the limitation at its inception.

Civil service policy, whether we might like it or not, commonly makes many public supervisory positions exclusively promotional, prohibiting lateral movement or advancement between agencies.

If such a limitation were to be forced upon a small department by compulsory arbitration, we might have a different case, but the city here is faced with its own agreement, at the outset, that the Scranton department is not too small for such a limitation.