590 A.2d 1327

**FRATERNAL ORDER OF POLICE
LODGE NO. 34, Appellant,**

**v.**

**CITY OF FARRELL, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 2, 1990.

Decided May 1, 1991.

Reargument Denied June 18, 1991.

Anthony C. Busillo, II, Firm of Gary M. Lightman, Harrisburg, for appellant.

Anthony Perfilio, Rodgers, Perfilio, Heiman & Sewinsky, P.C., Sharon, for appellee.

Before DOYLE and KELLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The Fraternal Order of Police, Lodge No. 34 (FOP), appeals from an order of the Court of Common Pleas of Mercer County, dated March 15, 1990, which vacated in part an Act 111 arbitration award.

The right of policemen and firemen employed by the Commonwealth or by its political subdivisions to bargain collectively was established by the legislature by the Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10, (Act 111). Section 1 of Act 111, 43 P.S. § 217.1, provides the right to bargain collectively over "terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and ... the right to an adjustment or settlement of their grievances or disputes[.]" Act 111 further provides the procedures for

implementing this right and it has established the arbitration mechanism for use in the event of an impasse and stalemate between the parties. See Sections 3–8, 43 P.S. §§ 217.3–217.8.

On December 31, 1988, the collective bargaining agreement between the FOP and the City of Farrell (Farrell) expired. Despite attempts to negotiate a new agreement, the parties were unable to do so and the matter was submitted to a Board of Arbitrators for resolution. The arbitrators issued a decision and award on February 13, 1989 covering a three year term from January 1, 1989 through December 31, 1991.

The award provided, as herein relevant, that as of January 1 of each year during which the award is in effect, "the base annual salary rate for each bargaining unit job shall be reestablished and increased to levels equal to *$1000.00* above the salary rates in effect for those jobs during each preceding Calendar year[.]" [1] (Arbitration Award, Article II, Section 1, p. 1, Reproduced Record (R.R.) p. 11a) (emphasis in original). The $1000.00 increase applied to the positions of senior patrolman and sergeant. The award further provided that for employees below the senior patrolman rank, base annual salary rates shall be determined on the basis of a percentage of the senior patrolman's salary rate in relation to the employee's number of years of service until the rate equalled the senior patrolman's job rate.

Section 7(a) of Act 111, 43 P.S. § 217.7(a), provides that "[t]he determination of the majority of the board of arbitration ... shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved.... No appeal therefrom shall be allowed to any court[.]"

The "no appeal" language of Section 7(a) of Act 111 has received considerable judicial review. In *City of Washington v. Police Department of Washington*, 436 Pa. 168, 259

---

**1.** The arbitrators' award also provided retirement provisions which Farrell challenged in the trial court. The trial court rejected Farrell's challenge of the retirement award and it has not been renewed here.

A.2d 437 (1969), the Supreme Court held that despite the "no appeal" provision of Act 111, the courts have jurisdiction to review arbitration awards in the nature of narrow certiorari, limited to questions concerning (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess in exercise of the arbitrators' powers; and (4) constitutional questions. The scope of review thus established has been consistently applied in subsequent cases. *Appeal of Upper Providence Township*, 514 Pa. 501, 526 A.2d 315 (1987) (Commonwealth Court erred in finding that Section 7302 of the Uniform Arbitration Act, 42 Pa.C.S. § 7302, expanded the scope of review to permit a court to review the award for errors of law and to require the reviewing court to "modify or correct the award where it is contrary to law"); *Guthrie v. Borough of Wilkinsburg*, 508 Pa. 590, 499 A.2d 570 (1985); *Township of Moon v. Police Officers of the Township of Moon*, 508 Pa. 495, 498 A.2d 1305 (1985).

The Court in *City of Washington* further held that the determination of whether the arbitration panel has been guilty of an excess in the exercise of power depends on whether it has gone outside the boundaries of its authority. The Court found that the enabling legislation which created the arbitration system under Act 111 contains no explicit reference to the scope of the arbitrator's power, but applied Article III, Section 31 of the Pennsylvania Constitution (compulsory arbitration) to its analysis. Article III, Section 31 of the Pennsylvania Constitution provides, "General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes ... shall be binding upon all parties[.]" The Court, in construing the phrase "acting in accordance with law", held:

> In spite of the fact that neither the relevant constitutional provision nor the enabling legislation clearly delineates the power of the arbitration panels, we are of the opinion that such panels may not mandate that a govern-

ing body carry out an illegal act. We reach this result by quite frankly reading into the enabling legislation the requirement that the scope of the submission to the arbitrators be limited to conflicts over legitimate terms and conditions of employment. Were this not so, virtually any issue could be submitted to the arbitrators under the guise of a labor conflict. Further, we fully realize that there will be issues that would be fully legitimate in the context of a private sector labor dispute which will not be legitimate in the context of a public sector labor dispute. Public employers are in many respects more limited in what they may do vis-a-vis their employees, and those limitations must be maintained. *The essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily.* (Emphasis added.) We emphasize that this does *not* mean that a public employer may hide behind self-imposed legal restrictions. An arbitration award which deals only with proper terms and conditions of employment serves as a mandate to the legislative branch of the public employer, and if the terms of the award require affirmative action on the part of the Legislature, they must take such action, if it is within their power to do so. 436 Pa. at 176–177, 259 A.2d at 442.

When there is an arbitration award adverse to a municipality, it may pursue one of two alternatives, namely (1) petition for review of the award, which the trial court must review in the nature of narrow certiorari; or (2) refuse to comply with the award and wait for the bargaining unit to seek enforcement of it, then defend on the basis of one of the allowable questions of narrow certiorari. Farrell chose the former.

In its petition before the trial court Farrell alleged, and the FOP admitted in its answer, that at all times relevant to these proceedings, Farrell had been declared to be a financially distressed municipality pursuant to the Financially Distressed Municipalities Act (Act 47).[2] In accordance with

2. Act of July 10, 1987, P.L. 246, 53 P.S. §§ 11701.101–11701.501.

Act 47, a coordinator had been appointed by the Secretary of Community Affairs to prepare a recovery plan for Farrell. The plan was promulgated on April 12, 1988, revised on May 11, 1988, and thereafter adopted by the city council on May 19, 1988, to be in effect through 1990.[3]

Farrell challenged the salary award on the basis that it was (a) contrary to and in violation of the recovery plan, (b) in violation of Section 252 of Act 47, (c) the arbitrator's award for increase of salary requires the City to perform an act which is illegal, contrary to the recovery plan and contrary to Act 47, and (d) the award, if implemented, requires Farrell to perform an act which it could not voluntarily, legally perform and, alternatively if it did perform said act, Farrell would subject itself to the penalty provisions of Act 47 of 1987.[4]

Farrell claimed that the recovery plan under which it operated restricted the increase in labor costs to approximately 2-½%.[5] The FOP argued that the statement as to labor costs was not a prohibition or recommendation but simply an assumption made in order to justify the recommendations in Article V of the plan, and that there were no recommendations in the recovery plan limiting police salaries.

**3.** In accordance with the provisions of Chapter 3 of Act 47 (Emergency Financial Aid for Distressed Municipalities), Farrell requested and received an interest-free loan from the Commonwealth in the amount of $651,000 on December 30, 1987, due July 31, 1988. (Recovery Plan, p. 2, R.R., p. 25a).

**4.** Section 264 of Act 47, 53 P.S. § 11701.264, as herein relevant, provides:

(a) General rule.—A municipality which remains classified as financially distressed by the department and has failed to adopt or implement a plan within a period set by the Federal court, or has failed or refused to follow a recommendation by a coordinator, shall be notified in writing by the coordinator that he is requesting the secretary to issue a suspension of Commonwealth funding to the municipality for its failure to take the steps enumerated in the notice.

**5.** Article IV of the recovery plan is titled "Projections of Revenues and Expenditures" and provides, in Item # 8, "Labor costs will increase approximately 2½% each year." (Recovery Plan, p. 9, R.R., p. 32a).

The trial court did not take any testimony, deciding the case on Farrell's petition, FOP's answer, and argument. The trial court agreed with the FOP that the statement in the recovery plan that labor costs would increase by 2–½% was only an assumption, but found that there was an actual recommendation in the plan which limits increases in salary and fringe benefits, stating:

In Section 241(c)[6] of the Financially Distressed Municipalities Act, (53 P.S. Section 11701.241(c) [sic] it provides, "(a) plan formulated by the appointed coordinator shall be consistent with applicable law and shall include any of the following factors ... possible changes in collective bargaining agreements and permanent and temporary staffing level changes or changes in organization." Pursuant to this legislative mandate the coordinator in drafting the recovery plan for the City of Farrell provided in Article V, page 28 for possible changes in collective bargaining agreements. The coordinator specifically provided that, "(t)here do not appear to be resources for increases in either base pay or fringes, however, [sic] they are expressed, in the near future. This will be the harsh reality at the bargaining table for the foreseeable future." We find this recommendation to be a binding obligation upon the City that there be no increases in either base pay or fringe benefits for the years 1989 or 1990. Even though the discussion contained on page 28 of the Plan is classified as a recommendation we find that it is a binding obligation on the City of Farrell in light of section 264(a), (53 P.S. Section 11701.264(a)) which provides that a municipality which is classified as financially distressed and fails or refuses to follow a recommendation of a coordinator is subject to the suspension of Commonwealth funding to the municipality for failure to follow the recommendations of the coordinator set forth in the recovery plan. For this reason we find that the language contained in Article V, page 28 of the Recovery Plan is a

6. We note that there is no Section 241(c) in Act 47; the correct citation is Section 241(3).

mandatory, binding prohibition on increases in either base pay or fringe benefits during the period of the plan, i.e. 1989 and 1990.

Based on this finding that base pay and fringe benefits may not be increased during the period of the recovery plan implemented by Farrell, we find that the arbitrators [sic] award of a $1,000.00 salary increase in the years 1989 and 1990 is illegal. Such a salary increase is in contravention of Section 252, (53 P.S. Section 11701.252) which provides that a collective bargaining agreement or arbitration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions....

(Opinion, pp. 6–7) (Footnote added).

Accordingly, the trial court vacated Article II, Section 1 of the arbitrators' award as it concerns the years 1989 and 1990. The trial court did not vacate the award for the year 1991 since the recovery plan does not extend to that year, but stated that if the plan is extended to 1991 the salary increase for that year is also void.

The FOP timely appealed to this Court. The question presented by the FOP is whether the trial court erred when it determined that the statement in the recovery plan, upon which it relied, constitutes a directive or mandate to Farrell to preclude the salary increases awarded by the arbitrators.[7]

We will review the relationship of Act 47 (financially distressed municipalities) to Act 111 (right to collective bargaining) in order to determine whether the trial court erred in finding that the salary increases are illegal. We conduct our review pursuant to the directive of Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921, namely, that the object of statutory interpretation and

---

7. The FOP also presents the question of whether the trial court erroneously failed to determine whether Farrell had in fact demonstrated that the salary increases awarded exceeded the salary recommendations contained in the recovery plan. We will not address this question because there are no recommendations in the recovery plan as to salary increases for bargaining unit employees.

construction is to ascertain and effectuate the intent of the legislature and to give effect to all of the statute's provisions, and when the language of a statute is clear and unambiguous, to read its provisions in accordance with their plain meaning and common usage.

We begin with a review of the policy of Act 47. Section 102, 53 P.S. § 11701.102, sets forth the purpose and legislative intent of the Act and provides:

(a) Policy.—It is hereby declared to be a public policy of the Commonwealth to foster fiscal integrity of municipalities so that they provide for the health, safety and welfare of their citizens; pay due principal and interest on their debt obligations when due; meet financial obligations to their employees, vendors and suppliers; and provide for proper financial accounting procedures, budgeting and taxing practices. The failure of a municipality to do so is hereby determined to affect adversely the health, safety and welfare not only of the citizens of the municipality but also of other citizens in this Commonwealth.

(b) Legislative intent.—

(1) It is the intent of the General Assembly to:

(i) Enact procedures and provide powers and guidelines to ensure fiscal integrity of municipalities while leaving principal responsibility for conducting the governmental affairs of a municipality, including choosing the priorities for and manner of expenditures based on available revenues, to the charge of its elected officials, consistent with the public policy set forth in this section.

(ii) Enact procedures for the adjustment of municipal debt by negotiated agreement with creditors.

* * * * *

■ A municipality may receive the benefits of Act 47 when it complies with the mandates of the legislature in relation to the application procedure for a determination of financial distress and when it thereafter adopts a recovery plan. See Sections 201–253, 53 P.S. §§ 11701.201–11701.-

253.  Consistent with the intent of the legislature and as provided by Act 47, the elected officials of the financially distressed municipality retain their principal decision-making powers, one of which is the determination of priorities in the application of available revenues.  The terms of the recovery plan, as reviewed and adopted by a municipality, reflect the priorities as influenced by the then current and prior financial condition of the municipality.

Fiscal integrity of municipalities is the goal of Act 47. Accordingly, we must recognize that in a dynamic society, changes will take place affecting the determination of priorities for the application of available revenues over the course of the recovery plan.  This fact was also recognized by the legislature when it specifically stated that "choosing the priorities for and manner of expenditures based on available revenues to the charge of elected officials" consistent with "public policy ... to foster fiscal integrity ... for the health, safety and welfare" of the municipalities' citizens.

Section 247 of Act 47, 53 P.S. § 11701.247, provides that the municipality's bargaining units be made aware of the existence of the recovery plan and how they will be affected by it.  It states:

(a) Coordinator's plan.—If the coordinator's plan is adopted by the municipal governing body, the coordinator shall be charged with implementing his plan and shall:

(1) Give written notice of plan adoption to creditors, *collective bargaining units* and other parties who will be directly affected by plan implementation.  In the notice he shall outline the provisions of the plan and specify how that person's claim or interest will be treated.  (Emphasis added.)

The FOP does not raise any issue that the coordinator did not give it written notice of the adoption of the recovery plan, an outline of the plan's provisions, and how it would

be treated under the plan.[8] Additionally, it cannot be gainsaid by the FOP that it was not aware of Section 252 Act 47 as well as the continued authority of the elected officials under Act 47 to establish priorities "for and the manner of expenditures based on available revenues." [9]

Act 47 provides, at Section 252, 53 P.S. § 11701.252, that:

A collective-bargaining agreement or arbitration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions.[10] (Footnote added.)

Applying the Statutory Construction Act, in giving the language of Section 252 its plain meaning and common usage, there is nothing in Section 252 which *per se* prohibits salary increases during the period of the recovery plan.[11] What it mandates is that any arbitration award executed after the adoption of a recovery plan *shall not in any manner* violate, expand or diminish *any* provisions of the plan.[12]

Where, as here, there is no recommendation as to police salaries in the recovery plan, the inquiry becomes, "Is the award the substitution of the arbitrators' discretion for that accorded to Farrell's elected officials under Act 47 for establishing the priorities in the application of available revenues, and/or whether the challenged portion of the

8. The notice required to be given by the coordinator is not part of the record before us.

9. The arbitrators were aware of Farrell's status as a distressed municipality and its recovery plan, as evidenced by the dissent of one member of the panel of arbitrators.

10. In *Wilkinsburg Police Officers Association v. Commonwealth,* 129 Pa.Commonwealth Ct. 47, 564 A.2d 1015 (1989), this Court held that Section 252 does not violate the statutory rights of police officers to collective bargaining under Act 111, and that it is a constitutional limit of that right.

11. Farrell's recovery plan does not contain any provisions which freeze salaries or prohibit salary increases for any of its employees.

12. The last phrase of Section 252 is "its provisions". The plural form means any and all of the recovery plan's provisions, not just those specifically relating to one facet or another of municipal government.

award violates, expands or diminishes, in any manner, the provisions of the recovery plan?"

■ We are aware that review on narrow certiorari does not ordinarily involve testimonial evidence, however the *City of Washington,* and its progeny were all decided prior to Act 47, which was enacted July 10, 1987, effective in 60 days. Our research does not reveal any cases dealing with the review of an arbitration award vis-a-vis Act 47 and a recovery plan adopted pursuant thereto. Accordingly, under the facts herein, we hold that testimony is required as to available revenues during the period of the recovery plan and up to the time of the arbitration award, the priorities established by the elected officials in the application of the available revenues and whether such priorities were made in good faith. Where, as here, a salary increase is awarded as the result of arbitration, testimony is required as to whether the salary increases result in a violation, expansion or diminishment in any manner of any of the provisions of this recovery plan.

The record before us is devoid of any evidence as to the revenues available to Farrell at and subsequent to the adoption of the recovery plan, the priorities established by the elected officials in the application of those available revenues, and the effect of the award on the priorities, as well as an absence of any evidence as to whether the award violates, expands or diminishes in any manner the provisions of the recovery plan. Accordingly, we will remand to the trial court for further proceedings for such determinations and disposition.

## ORDER

AND NOW, this 1st day of May, 1991, the order of the Court of Common Pleas of Mercer County, dated March 15, 1990, is reversed and the case is remanded to the trial court for a hearing for a determination consistent with this opinion.

KELLEY, Judge, concurring and dissenting.

While I concur in the result reached by the majority, I must respectfully dissent as to the need to remand this case.

Our Supreme Court has consistently held that an arbitration award may only require a public employer to do that which it could do voluntarily. *City of Washington v. Police Department of Washington*, 436 Pa. 168, 177, 259 A.2d 437, 442 (1969). The Court emphasized, however, that "a public employer may not hide behind self-imposed legal restrictions." *Id.* We have held that subjects which would require the employer to perform any duty or take some action *which is specifically or impliedly prohibited by statutory law* are excluded from the scope of an arbitration award. (Emphasis added.) *Cheltenham Township v. Cheltenham Township Police Department*, 11 Pa.Commonwealth 348, 352, 312 A.2d 835, 838 (1973).

Section 252 of Act 47 [1] provides that:

A collective bargaining agreement or arbitration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions.

To me, our task is to construe Section 252 to determine, as a matter of law, what is meant by "provisions," since only then can we decide whether statutory law specifically or impliedly prohibits implementation of the arbitration award.[2] Act 47 does not define "provision," nor is it defined in the Statutory Construction Act [3]. Hence, we must define "provision" according to its common and approved usage. The most applicable definition of "provision" is a "proviso" or "stipulation made in advance." Webster's Third New International Dictionary 1827 (1966). "Proviso" is defined as "a conditional stipulation," *id.*, and

1. 53 P.S. § 11701.252.

2. Our scope of review is limited to a determination of the legality of the award. *Fraternal Order of Police, E.B. Jermyn Lodge v. City of Scranton*, 26 Pa.Commonwealth Ct. 513, 364 A.2d 753 (1976).

3. Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991.

"stipulation" is "a condition, requirement, or item specified in a contract, treaty, deed, will or law." *Id.* at 2245.

We need now only to review the City's recovery plan to determine what "provisions" it contains. The recovery plan is divided into several sections, as mandated by Section 241 of Act 47. Section Five of the plan is entitled "Discussion and Recommendations." This section "identifies each issue ... relevant to the financial distress ..., describes the current situation with regard to that issue, and provides one or more recommendations to resolve the issue." [4] Within Section Five is a subsection entitled "Staffing and Service Levels." [5] This subsection discusses the history of the City's staffing levels, provides an analysis of current staffing and finally makes six specific recommendations. Within the analysis of current staffing discussion, and under a further subheading of "Collective Bargaining Agreements", the following language appears: [6]

> There do not appear to be the resources for increases in either base pay or fringes, however they are expressed, in the near future. This will be the harsh reality at the bargaining table for the foreseeable future.

The court of common pleas relied on this language to find a mandatory, binding prohibition on increases in either base pay or fringe benefits. The recommendations related to staffing and service levels, however, do not incorporate this language, and the only concrete recommendation concerning collective bargaining agreements is the following: [7]

> 4. Avoid increases in the cost of fringes in the collective bargaining agreements. Propose, in future bargaining, that a two-tier system be agreed upon, which provides lesser benefits for new employees. Particular emphasis should be given to reducing the costs for paid holidays, sick leave provisions and medical insurance for retirees.

4. Recovery Plan at 11, R. at 34a.
5. Recovery Plan at 21, R. at 44a.
6. Recovery Plan at 28, R. at 51a.
7. Recovery Plan at 29, R. at 52a.

Section 241 of Act 47 provides that a plan formulated by the appointed coordinator shall contain recommendations.[8] Section 264 provides that a municipality which "has failed or refused to follow a recommendation by a coordinator" is subject to suspension of Commonwealth funding.[9] It is therefore the recommendations which are specifically mandated by Act 47, and compliance with these recommendations is a condition precedent to continued Commonwealth funding.

I would therefore hold that only the recommendations contained in the plan are mandatory, and that the "provisions" referred to in Section 252 are synonymous with the recommendations required to be in the recovery plan. Because the language relied on by the trial court is concededly not a recommendation, I would hold that the arbitrators' salary award does not violate Section 252 of Act 47.

Similarly, I believe that the plan does not limit the increase to 2-½ percent. Section Four of the recovery plan is entitled "Projections of Revenues and Expenditures." Section Four states:

It is necessary to make a number of assumptions about costs and revenues during the period in question. The recommendations are based in part on these assumptions. In the event the assumptions do not materialize during the next two years, the City may identify other measures to arrive at a balanced budget. In this case, a revision to the recovery plan should be discussed with the coordinator and submitted to DCA [Department of Community Affairs] for approval.

Recovery Plan at 8, R. at 31a.

The plan then makes nine assumptions, among them that "[l]abor costs will increase approximately 2½% each year." Recovery Plan at 9, R. at 32a.

FOP argued and the trial court found that the purported limitation on labor costs was only an assumption and not a

8.   53 P.S. § 11701.241(2).
9.   53 P.S. § 11701.264(a).

binding recommendation. As stated in the recovery plan itself, the language at issue is one of "a number of assumptions about costs and revenues during the period in question." While it is true that the recommendations "are based in part on these assumptions," I can find no recommendation which seeks to impose any percent increase on labor costs. In contrast, several of the recommendations pertaining to labor are quite specific. These include:

2. Do not increase the sworn police officer complement above present levels without first studying the shift scheduling techniques carefully to insure the best use of available personnel.

3. Actively pursue the joint police dispatch proposal. Determine what factors argue against it beyond a perceived unpopularity because the dispatchers "won't know the streets." Re-evaluate the actual savings which can be realized.

4. Avoid increases in the cost of fringes in the collective bargaining agreements. Propose, in future bargaining, that a two-tier system be agreed upon, which provides lesser benefits for new employees. Particular emphasis should be given to reducing the costs for paid holidays, sick leave provisions and medical insurance for retirees.

5. Institute an aggressive program to reduce overtime, particularly in the police and fire departments.

Recovery Plan at 29, R. at 52a.

These and other recommendations in the recovery plan are specific. The plan could certainly have included specific recommendations prohibiting or limiting salary increases, but did not. In fact, the recovery plan itself provides a remedy in the event that the assumptions do not materialize, allowing the City to identify other measures to arrive at a balanced budget and to discuss a revision of the recovery plan with the coordinator and to submit it to the Secretary of Community Affairs.

Just as a court opinion often consists of a specific holding and broader language which is considered dicta, the recovery plan contains specific recommendations surrounded by

assumptions, projections, and discussion, which collectively could be labelled "dicta." The holding of a court opinion becomes controlling law, while the dicta has no precedential value. By analogy, I believe that only the "holding" of a recovery plan should invalidate an arbitrator's award. The language relied on by the trial court clearly constituted "dicta." By remanding for additional evidence, we would allow the authors of the plan to testify as to what they intended their "dicta" to mean. This we should not do.